**David K. GIBBS, Appellant,**

v.

**MAIN BANK OF HOUSTON, et al., Appellees.**

No. 01–82–0873–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 12, 1984.

Rehearing Denied Feb. 9, 1984.

Joe K. Longley, Austin, Alice Trevathan, Houston, for appellant.

Joe J. Reynolds, Gary J. Langford, Houston, for appellees.

Before EVANS, C.J., and BASS and DUGGAN, JJ.

## OPINION

EVANS, Chief Justice.

This suit is the outgrowth of a decision rendered in *Lawson v. Gibbs,* 591 S.W.2d 292 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). In that case, the plaintiff David K. Gibbs challenged the validity of a foreclosure sale of property he had earlier purchased from Wortham Investments, Inc. The trial court entered a summary judgment in favor of Gibbs, decreeing that the foreclosure sale was invalid. However, that judgment was reversed by the Court of Civil Appeals and the cause was remanded for trial of the damage claim asserted against Gibbs by the purchaser at the foreclosure sale. The Supreme Court of Texas refused Gibbs' application for writ of error and on July 23, 1980, overruled his motion for rehearing. *Gibbs v. Lawson,* 23 Tex. S.Ct. Journal 526 (July 26, 1980).

On December 5, 1980, Gibbs filed a supplemental petition in the remanded suit, adding as defendants Guardian Title Company of Houston Inc., Safeco Title Insurance Company and Miles Wortham. In this petition Gibbs asserted a claim against Safeco on the title policy issued when he purchased the property; a claim against Guardian, Safeco, Miles Wortham and Wortham Investments, Inc. for fraud and/or misrepresentation and for violations

of the Deceptive Trade Practices Act; and a claim against Guardian and Safeco for violations of art. 21.21, Texas Insurance Code; and rules and regulations promulgated by the State Board of Insurance. On February 12, 1982, Gibbs alleged an additional cause of action against Guardian and Safeco for negligence and gross negligence. The case was tried before a jury, and after both sides rested, the court instructed a take nothing judgment in favor of all three defendants. Gibbs brings this appeal from that judgment.

The record reflects that in August, 1975, Gibbs responded to a newspaper advertisement for the sale of a small apartment complex in Houston. He was shown the apartment units by Mr. Dan Besborn, who represented himself to be the partner of the defendant, Miles Wortham, and also as an officer in Wortham Investments, Inc., the owner of the property. Besborn told Gibbs that the asking price for the property was $135,000, which could be paid with a $35,000 cash down payment and the purchaser's assumption of a first lien mortgage indebtedness in favor of Wren Mortgage in the approximate amount of $100,-000. After negotiation, the parties executed an earnest money contract providing for a total purchase price of $125,000, a cash down payment of $15,000, the assumption of the $100,000 Wren Mortgage debt, and the execution of a second lien note to the seller, Wortham Investments, Inc., for the balance of the purchase price in the approximate amount of $10,000.

Prior to the date of closing, Guardian Title Company issued and furnished to Gibbs a preliminary title report, evidencing title in Wortham Investments, Inc., and showing no outstanding liens other than the lien securing the $100,000 debt to Wren Mortgage. On October 14, 1975, Gibbs and Wortham Investments Inc. closed their transaction pursuant to the contract by executing appropriate documents. Among the instruments executed at that time was the Wortham defendants' affidavit representing that there were no liens outstanding against the property other than that securing the Wren Mortgage note. Several

days later, on October 17, 1975, Gibbs received an owner's title insurance policy issued by defendant Safeco Title Insurance Company, and signed by its authorized agent, Guardian Title Company, containing no pertinent exceptions, other than those reflected by the preliminary title report. Thus, neither the closing documents nor the title policy revealed the existence of an outstanding recorded lien securing a $10,-000 note from Wortham Investments, Inc. to Mr. William Craig dated April 1, 1975. Following the closing of his transaction with Wortham, Gibbs paid all monthly installments coming due on the $100,000 Wren mortgage debt which he had assumed, and also made all required payments on his second lien note to Wortham Investments, Inc.

On December 9, 1976, slightly over a year after the date of his purchase, Gibbs for the first time learned from Wren Mortgage that Main Bank of Houston, the assignee of the William Craig note and lien, had caused the lien securing the note to be foreclosed and the property sold at a public foreclosure sale. Gibbs promptly contacted Guardian Title which filed, on his behalf, the above-mentioned suit to have the foreclosure sale set aside. When the appellate court's decision in that action defeated Gibbs' effort to recover title to the property, he filed the supplemental petition in the instant proceeding, asserting the claims which are the subject of this appeal.

The standard of review applicable to this appeal from a directed verdict requires that the evidence be viewed in the light most favorable to Gibbs' position, and that all contrary evidence and inferences to be drawn therefrom be disregarded. If there is evidence on a controlling fact about which reasonable minds could differ, the trial court's judgment must be reversed and the cause remanded for a new trial. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex.1976). On this appeal, it is Gibbs' burden to show that the court's directed verdict cannot be supported on any of the grounds set forth in

the defendants' motion for instructed verdict, *McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex.1964). In deciding whether Gibbs met that burden, this court must consider whether the record contains any evidence of probative force, which, considered alone, raises a fact issue that would support a judgment in favor of Gibbs. *Freitas v. Twin City Fisherman's Coop. Ass'n*, 430 S.W.2d 579, 581 (Tex.Civ.App.—Waco 1968, no writ).

The trial court's take nothing judgment does not specify which of the several grounds alleged in the defendants' motion constituted the basis for its judgment. Therefore, we must determine whether the judgment may be sustained on the basis of any one or more of the grounds alleged in the motion.

The defendants' motion for instructed verdict asserts:

1. That all causes of action except the claim on the title policy are barred by limitation.

2. That Gibbs is not a "consumer" within the meaning of the Deceptive Trade Practices Act.

3. That Gibbs failed to prove a cause of action for damages under any of its theories.

4. That the defendants were under no duty to disclose material facts known to them to Gibbs.

5. That Gibbs failed to offer evidence showing nondisclosure of a material fact by the defendants.

We first consider the defendants' contention that Gibbs' causes of action, except only his claim on the title policy, are barred by limitation as a matter of law.

The evidence shows that Gibbs first became aware of the outstanding Craig lien on December 9, 1976, and that his claims asserted under the Deceptive Trade Practices Act were filed within four years of that date. Assuming that Gibbs' cause of action under the Deceptive Trade Practices Act arose when he first learned of the outstanding lien, we are faced with the question of whether the two year or the four year statute of limitation applies to such action.

■■■■■ The Deceptive Trade Practices Act, as amended effective August 27, 1979, provides for a two year limitation period for actions brought under the Act. However, Gibbs' claims are based on alleged violations of the Act occurring prior to the 1979 amendment, and the four year statute of limitation is therefore applicable. *Jim Walter Homes, Inc. v. Chapa*, 614 S.W.2d 838 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). Since Gibbs' claims based on common law fraud and for alleged violations of the Texas Insurance Code immediately grew out of transactions in writing, we hold that such claims also are governed by the four year statute of limitations. *See, Holifield v. Coronado Building, Inc.*, 594 S.W.2d 214 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

We further hold that the pleadings and the evidence raised fact issues for the jury as to whether the defendants are estopped from asserting the defense of limitations.

The evidence shows that after Gibbs first learned of the outstanding Craig lien, he had a telephone conversation with Mr. Barry Bradley, the president of Guardian Title Company, concerning the undisclosed lien. Gibbs testified that Bradley advised him "he did not know what had happened." Gibbs said the attorneys for Guardian Title led him to believe that the matter was the result of a "dispute" between Wortham on the one hand, and Craig and Main Bank on the other, regarding the correct amount owing on the Craig note, something to do with the air conditioning system at the apartments. There was also evidence showing that the Wortham-Craig loan transaction had been handled by Guardian Title Company, that the transaction was closed at the title company offices, and that a Guardian escrow officer participated in the closing.

■■■■■ Estoppel may bar a limitations defense when a party, or his agent or representative, induces a prospective plaintiff to refrain from filing suit within the applica-

ble time period. *Jim Walter Homes, Inc. v. Mora,* 622 S.W.2d 878 (Tex.App.—Corpus Christi 1981, no writ). Similarly, the fraudulent concealment of a cause of action will bar the defense of limitations. *Id.* at 880.

■ Although Gibbs clearly had notice of the outstanding lien more than two years prior to the filing of his instant claims, the evidence does not establish, as a matter of law, that he then had reason to inquire into the defendants' role in the Craig transaction. There is no evidence that he was made aware that the title company had actively participated in the Craig lien transaction, or that he had any reason to make an independent investigation of the matter. We thus conclude that the record contains some evidence that might support a jury finding on the issues of estoppel and fraudulent concealment.

We sustain Gibbs' first point of error.

We next consider whether Gibbs is a "consumer" within the meaning of the Deceptive Trade Practices Act. In 1975, when the alleged deception occurred, the word "consumer" was defined in the Act as "an individual, partnership or corporation who seeks or acquires by purchase or lease any goods or services," Tex.Bus. & Com.Code Ann., sec. 17.45 (Vernon Supp.1982), and the definition of "services" excluded services purchased or leased for commercial or business use.

Guardian and Safeco contend that their only role in the transaction was to provide title insurance, and that this service was rendered for business or commercial use, *i.e.,* the rental of apartment units. Thus, the defendants argue that Gibbs was not a consumer and was relegated to his common law remedies. In support of their position, Guardian and Safeco cite: *Greene v. Bearden Enterprises, Inc.,* 598 S.W.2d 649 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); as well as *Farmers & Merchants State Bank v. Ferguson,* 617 S.W.2d 918 (Tex.1981); and *Bennett v. Imperial Ins. Co.,* 606 S.W.2d 7 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

■ We do not consider these authorities as controlling the facts in the case at bar. The purchase of title insurance must be viewed in the context of the entire real estate transaction which, essentially, forms the basis of Gibbs' complaint. The coverage of the Deceptive Trade Practice Act is not restricted to deceptive practices committed by parties furnishing goods or services, but rather extends to *any* deceptive practice made in connection with the purchase or lease of such goods or services. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981). Because the substance of Gibbs' cause of action relates to his purchase of real estate and to his subsequent loss of that property, the role of Guardian and Safeco in providing title insurance in connection with that transaction falls within the coverage of the Deceptive Trade Practices Act. *See, Flenniken v. Longview Bank & Trust Co.,* 26 S.Ct.J. 492, 642 S.W.2d 568 (1983).

■ We further conclude that Gibbs' real estate purchase was not a commercial transaction so as to be excluded by the Act's provision in 1975 that services for commercial or business use were not covered. The evidence shows that Gibbs purchased the real estate not for resale or for use in the production of other goods, but rather for the purpose of leasing out the apartment units as part of a personal investment plan. Thus, the nature of the transaction does not bar Gibbs' status as a consumer, and the facts in the decision which the defendants cite, *Ratcliff v. Trenholm,* 596 S.W.2d 645 (Tex.Civ.App.—Tyler 1980, no writ), are distinguishable from those in the case at bar.

We sustain Gibbs' second point of error.

We next consider the defendants' contention that Gibbs failed to offer probative evidence of damages on any of the theories alleged in his pleadings.

The evidence is undisputed that the purchase price paid by Gibbs for the property was $125,000, and that his title insurance policy was issued in that same amount. Gibbs testified and offered expert testimo-

**560**

ny tending to show that the actual market value of the property at time of closing was $190,000, and that the property increased in value to $250,000 in December, 1976, and to $585,000 in July, 1980. Gibbs' position is that this evidence was sufficient to support his damage claims.

■■■■ The defendants contend that in order to raise the damage issue, Gibbs was required to offer proof of his "equity" in the property. We do not agree. The actual damages recoverable under sec. 17.-50(b)(1) of the Deceptive Trade Practices Act are to be determined by the "total loss" sustained by a consumer as a result of the deceptive trade practice. *Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex.1981). This may be established from proof of the purchase price paid for the particular goods sold, taking into account any profits or other benefits remaining in the hands of the consumer. *See, Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290 (Tex.Civ.App.—Waco 1978, writ ref'd n.r. e.). In the case at bar, the jury was given a range of values within which it could have determined the "total loss" actually sustained by Gibbs. Thus, we hold that there is some evidence in the record to support Gibbs' pleadings on the issue of damages.

The third through seventh points of error are sustained.

We finally consider the question of whether the defendants had a duty to disclose to Gibbs any material facts affecting his decision to purchase the property, and whether there is some evidence in the record in support of Gibbs' pleading of nondisclosure.

Gibbs contends that he was induced to purchase the property because the title report and title policy failed to disclose the outstanding Craig lien. Both Guardian and Safeco argue that they owed no duty to make disclosure, and that they merely occupied the position of an indemnitor against failure of title.

■■■■ None of the authorities relied upon by the defendants involved a title

company's liability for representations and nondisclosures made in violation of the Deceptive Trade Practices Act. Gibbs' pleading and proof was based upon his contention that the title company and the seller conspired to conceal information regarding a pre-existing lien against the property. It was clearly the Legislature's intent in enacting the Deceptive Trade Practices Act to protect the consumer against the nondisclosure of material fact, such as in the instant case, and the Act, even prior to the 1979 amendment, provided a remedy to a consumer damaged by such deceptive practices. *See, Sam Montgomery Oldsmobile Co. v. Johnson*, 624 S.W.2d 237 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ).

We sustain the eighth and ninth points of error.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.