**TECTONIC REALTY INVESTMENT COMPANY, Appellant,**

v.

**CNA LLOYD'S OF TEXAS INSURANCE COMPANY, Appellee.**

No. 05–90–01162–CV.

Court of Appeals of Texas, Dallas.

June 27, 1991.

Rehearing Denied Aug. 6, 1991.

**648**

Michael R. Johnson, Donald C. Hood, Hervey P. Levin, Dallas, for appellant.

William E. Reid, David J. Schubert, T.B. Nicholas, Jr., Dallas, for appellee.

Before ROWE, LAGARDE, and OVARD, JJ.

## OPINION

OVARD, Justice.

This is a statute of limitations case. The lawsuit arose from a dispute over payment of insurance proceeds. Tectonic Realty Investment Company (TRICO) owned an interest in a condominium apartment project in Dallas. CNA Lloyd's of Texas Insurance Company (CNA) was the casualty insurance carrier for the project. The condos burned. CNA refused to pay for the entire loss until after TRICO met conditions not mentioned in the insurance policy. More than two years later, TRICO sued CNA for breach of its statutory duty under Texas Insurance Code article 21.21 and for breach of its common law duty of good faith and fair dealing. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 168 (Tex.1987). The trial court ruled that the statute of limitations had run on all of TRICO's causes of action, and it awarded CNA summary judgment. On appeal, TRICO argues that limitations had not expired at the time it filed its claims. We determine that limitations had expired on TRICO's common law bad faith claim but that limitations do not bar the statutory claim under article 21.21. Consequently, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Before an April 2, 1985 foreclosure, TRICO was the management agent for La Alta, a condominium apartment project in Dallas, Texas. In addition, TRICO held a second mortgage lien on the project. On October 1, 1983, TRICO and the La Alta Homeowners Association bought an insurance policy (the policy) from CNA. The policy insured the buildings, their contents, and their use and occupancy. On July 5, 1984, a fire destroyed a portion of the project. TRICO and CNA reached a tentative agreement on August 28, 1984, that the cash value of the building loss totalled $973,929. CNA declined to pay the total loss in a lump sum. On September 26, 1984, CNA offered to pay $650,000 immediately and the balance over time as the repairs progressed. TRICO accepted the $650,000 advance on October 26, 1984, and submitted a proof of loss for $932,483. (The figure represented the $973,929 tentatively agreed upon earlier, minus a $1000 deductible and $39,947 paid directly to the construction contractor.) TRICO requested immediate payment of $282,483, the difference between the proof of loss and the $650,000 advance.

CNA wrote to TRICO's adjuster on January 18, 1985, to announce that it had rejected TRICO's proof of loss. The letter explained that CNA accepted TRICO's characterization of the physical damage to the project but refused to accept TRICO's estimate of the repair cost. CNA stated "that the only way to fully determine the actual cash value of the loss is to complete the work in stages and advance payment for these stages until the job is done." CNA also claimed the right to audit repair expenditures and withhold reimbursement until after evaluation.

On January 31, 1985, TRICO met with its attorney and with attorneys and representatives of the other potential claimants to discuss CNA's refusal to pay. TRICO learned at the meeting that, under the policy, "CNA [was] obligated to pay the cash value for the damaged buildings, and the insured [was] under no obligation to rebuild the project." One of the attorneys present advised TRICO to stop reconstruction work and to warn CNA that TRICO would sue to enforce the policy if CNA did not pay.

TRICO took the advice to heart. On February 8, 1985, Gerald Frank, an attorney representing TRICO and the La Alta Homeowners Association, complained to CNA:

> I am surprised to learn that your company has declined to pay the actual cash value building loss, which was agreed upon on August 28, 1984, in the sum of $973,729.00....
>
> Unfortunately, delays in the settlement of this loss have placed the entire project in jeopardy since the mortgage company is moving toward foreclosure of all the buildings in the project. At this time, failure to make payments under the terms of the policy along with other economical factors, have forced the owners to abandon the repair and replacement of the damaged buildings.

The last portion of the letter recited a formal demand:

> At this time, demand is made upon you to make the following payments resulting from the fire loss of July 5, 1984, and the subsequent damage to the property in September of 1984 caused by an intervening storm while temporary repairs were being made:

| | |
|---|---:|
| Original building damage claim | $ 973,729.00 |
| Additional storm damage to building | 145,695.57 |
| Loss of rents | 197,267.00 |
| Contents damage | 6,909.00 |
| | |
| TOTAL | 1,323,600.50 [sic] |

> The total sum of $1,323,600.50 [sic], less credit for any amounts already advanced by your company, is immediately due and payable under the terms of the policy. Any costs and legal fees incurred by further delays will be chargeable to the company.
>
> I await your immediate reply.

Unimpressed by the demand letter, CNA did not pay. United Postal Savings (UPS), which held the first mortgage on La Alta, foreclosed on April 2, 1985. On August 27, 1985, CNA paid $380,000 into the registry of the court and filed a petition for interpleader. The petition recited that CNA had agreed to pay $380,000 (in addition to the amounts already paid) as a final settlement of its liability under the policy. The petition alleged that CNA was an innocent stakeholder seeking to avoid multiple liability. CNA asked the court to determine entitlement to the money. The interpleader petition named TRICO, UPS, and several other entities as defendants.

On March 20, 1987, during the pendency of the interpleader action, TRICO filed a counterclaim against CNA. The counterclaim alleged: 1) breach of the common law duty of good faith and fair dealing;[1] and 2) breach of statutory duties contained in Texas Insurance Code article 21.21. The counterclaim alleged that CNA offended article 21.21 by violating section 4 of article 21.21, State Insurance Board Order No. 18663, and section 17.46 of the Deceptive Trade Practices–Consumer Protection Act. Texas Insurance Code article 21.21, section 16 incorporates part of the DTPA. TRICO did not sue under the policy for breach of contract. Instead, it sought tort damages for unreasonable delay in paying the fire insurance claim. TRICO alleged that CNA's bad faith delay proximately caused the foreclosure of the first mortgage on La Alta. TRICO pleaded that the foreclosure created damages of $1,200,000. TRICO also asked for exemplary damages and treble damages.

The trial judge resolved the interpleader action in August 1988. He awarded 84.2% of the interpleaded money to UPS and TRICO. He severed TRICO's counterclaim against CNA. This appeal is the continuation of the counterclaim filed on March 20, 1987, and severed from the interpleader in August 1988. CNA moved for summary judgment on TRICO's counterclaim in April 1990. CNA pleaded that a two-year statute of limitations applied to each of TRICO's causes of action and that limitations had run on all claims. The trial court

---

1. The claim for breach of the common law duty of good faith and fair dealing contains language suggesting the existence of a separate action for breach of fiduciary duty. See discussion of "Fiduciary Duty."

granted CNA's motion and expressly relied upon limitations. TRICO appealed.

## ARGUMENTS OF COUNSEL

TRICO complains in a single point of error that the trial court erred in rendering summary judgment for CNA. TRICO's point of error makes four distinct arguments.[2] TRICO contends that summary judgment was improper because: 1) CNA failed to establish conclusively the specific date on which limitations began to run. 2) CNA's delay in paying the claim was a continuing tort that did not end until CNA paid the $380,000 into the registry of the court. Therefore, limitations did not commence until August 27, 1985. 3) CNA's motion for summary judgment failed to address all of TRICO's causes of action. TRICO argues that, imbedded within the text of its cause of action for breach of the common law duties, it pleaded a distinct cause of action for breach of fiduciary duty. 4) If TRICO's causes of action accrued before April 1, 1985, as CNA argues, the applicable limitations period for TRICO's article 21.21 claim was four years, rather than two.

CNA challenges all of TRICO's arguments. CNA points to no single date when limitations began to run. However, CNA argues that the summary judgment evidence proves that a two-year limitations period began no later than February 8, 1985. TRICO filed its counterclaim on March 20, 1987. In response to TRICO's second argument, CNA contends that TRICO waived its "continuing tort theory" by failing to plead it affirmatively in the trial court. CNA asserts that "continuing tort" is a plea in confession and avoidance, like the Discovery Rule, and must be affirmatively pleaded. *See* TEX.R.CIV.P. 94. CNA also argues that a continuing tort theory is not applicable to this case:

> An examination of the summary judgment evidence reveals the absence of a continuing course of conduct by CNA which constitutes a breach of CNA's

common law duty of good faith and fair dealing, a violation of the Texas Insurance Code or the Texas Deceptive Trade Practices Act. The record established that TRICO is complaining of one act. CNA's rejection of TRICO's proof of loss, which resulted in CNA's alleged wrongful retention of TRICO's personal property. [sic]

In response to TRICO's third argument, CNA asserts that its summary judgment motion encompassed all of the causes of action that TRICO pleaded. CNA argues that TRICO did not tell the trial court about a lurking cause of action for breach of fiduciary duty, and TRICO should not be permitted on appeal to conjure a new cause of action out of the old pleadings. CNA also argues that Texas recognizes no fiduciary duty between an insurance carrier and the insured. In response to TRICO's fourth argument, CNA asserts that a two-year limitations period now applies to article 21.21 claims based on wrongful retention of settlement money, no matter when the cause of action accrued. CNA argues that a two-year statute applies retroactively to all insurance torts.

## LEGAL ANALYSIS

Three of TRICO's arguments concern issues related to the statute of limitations. One argument, TRICO's third, addresses an issue unrelated to limitations, whether CNA's motion for summary judgment covered all of TRICO's causes of action and whether a cause of action exists in Texas for breach of fiduciary duty by an insurance carrier to an insured. We shall analyze the fiduciary duty argument first. Then we will address the arguments relating to limitations.

### Fiduciary Duty

■ The trial court decided this case on summary judgment. When a plaintiff files suit alleging several causes of action, in order to secure a summary judgment as to the entire case, a defendant moving for summary judgment must defeat each of

---

2. TRICO's original appellate brief contained five arguments. The fifth was a response to a due process defense CNA asserted in the trial court.

CNA abandoned the due process defense on appeal. TRICO deleted the fifth argument from its reply brief. We shall not address it.

the plaintiff's causes of action. *Mary Kay Cosmetics v. North River Ins. Co.*, 739 S.W.2d 608, 609 (Tex.App.—Dallas 1987, no writ). A motion for summary judgment will not defeat a cause of action not addressed in the motion. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983); *Mary Kay Cosmetics*, 739 S.W.2d at 609–10. CNA's motion for summary judgment does not mention any cause of action for breach of fiduciary duty. We must determine first, whether TRICO's pleadings sufficed to notify CNA that TRICO claimed breach of fiduciary duty, and second, whether Texas recognizes such a fiduciary duty.

■ The purpose of pleading is to give the opposing party enough information to enable him to prepare a defense. *Reed v. Israel Nat'l Oil Co.*, 681 S.W.2d 228, 234 (Tex.App.—Houston [1st Dist.] 1984, no writ). A pleading that sets forth a claim for relief must contain a short statement of the cause of action sufficient to give fair notice of the claims involved. TEX.R.CIV.P. 47. TRICO's original counterclaim (March 20, 1987) contains two large sections bearing the headings "TRICO's First Cause of Action" and "TRICO's Second Cause of Action." The section that pleads the second cause of action alleges three theories of how CNA violated article 21.21 of the Texas Insurance Code. The section on TRICO's first cause of action, for breach of the duty of good faith and fair dealing, is less specific. Nonetheless, it contains an allegation that CNA violated a fiduciary duty owed to TRICO:

> TRICO promptly submitted to CNA a claim which gave rise to CNA's duty to promptly pay benefits. After this duty to pay benefits arose, such benefits were no longer the property of CNA but were held by CNA for the benefit and use of TRICO, thereby creating a fiduciary relationship between CNA and TRICO. But, by virtue of the acts of TRICO [sic] aforementioned, and its breaches of the fiduciary duty owed by CNA to TRICO, TRICO is entitled to recover exemplary damages.

Although TRICO did not designate its breach of fiduciary duty claim as a "cause of action," TRICO's pleading informed CNA that TRICO claimed CNA breached a fiduciary duty owed to TRICO. The pleading gave CNA enough information to prepare a defense. In addition, TRICO's response to CNA's motion for summary judgment pointed out that CNA's motion did not address the breach of fiduciary duty claim. We conclude that TRICO did not waive its claim for breach of fiduciary duty. Next, we determine whether Texas recognizes such a duty in the context of this case.

■ Since 1987, Texas courts have recognized that insurance carriers owe their customers a common law duty of good faith and fair dealing in the processing and payment of claims. *Arnold*, 725 S.W.2d at 168. The duty is imposed on the insurer because of the disparity of bargaining power and the exclusive control the insurer has over the processing of claims. *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex.1988); *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 565 (Tex.App.—Dallas 1990, writ denied). However, no Texas court has declared that duty to be fiduciary. *Caserotti*, 791 S.W.2d at 565. We decline TRICO's invitation to blaze the trail. As we pointed out in *Caserotti*, fiduciary duties arise in confidential relationships. *Caserotti*, 791 S.W.2d at 565. Some of those relationships are formal, such as attorney-client, partnership, or trustee-beneficiary. *Caserotti*, 791 S.W.2d at 565. Some are informal, but all have in common a greater degree of trust and confidence than a customer ordinarily reposes in his insurance company. *Caserotti*, 791 S.W.2d at 565. We reject TRICO's third argument.

### Statute Of Limitations

The trial court judgment relies explicitly on the running of the statute of limitations. TRICO concedes that CNA's retention of the policy proceeds ended when CNA paid the $380,000 into the registry of the court. CNA's tortious behavior, if any, stopped no later than August 27, 1985. TRICO filed its counterclaim on March 20, 1987. The

general limitations period for torts is two years. TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986). To overcome the limitations bar, TRICO must show either: 1) that the statute of limitations did not start running until after March 20, 1985; or 2) that a four-year limitations period applies to at least one of its causes of action. TEX.CIV.PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986). TRICO argues both propositions. On appeal, we must determine when limitations began to run on TRICO's claims and whether a four-year statute applies to any of TRICO's causes of action.

## WHEN LIMITATIONS STARTED

▆ The statute begins to run when the cause of action accrues. TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.003, 16.004 (Vernon 1986). The cause of action accrues when facts come into existence that authorize a claimant to seek a judicial remedy. *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex. 1977). Stated another way, the cause of action accrues when the plaintiff suffers compensable injury due to the defendant's wrongful act. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). For an intersection collision, the plaintiff suffers injury when the cars collide. The cause of action accrues on that day. In wrongful death suits, the cause of action accrues on the day the victim dies. *Moreno,* 787 S.W.2d at 351.

However, cases arising from unreasonable delay or nonpayment of insurance claims often present problems in determining when the plaintiff has suffered injury. Insurance companies generally do not pay claims the day after the loss occurs. Even when the insurance carrier does not challenge its liability, the company will want an adjuster to investigate the claim and calculate the loss. Once an adjuster or a claims analyst has confirmed the value of the claim, the company may still take a reason-

able time to pay without giving the insured a cause of action. In addition, insurance companies have the right to deny invalid or questionable claims. *Aranda,* 748 S.W.2d at 213. The insured acquires a cause of action for bad faith only if the insurance company actually knew there was no reasonable basis to deny coverage or delay payment, or if the insurance carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. *Aranda,* 748 S.W.2d at 213. If a reasonable basis exists for extended investigation or for denial, a delay may last several months without the plaintiff suffering any compensable injury. No cause of action would accrue. *National Union Fire Ins. v. Hudson Energy Co.,* 780 S.W.2d 417, 426 (Tex.App.—Texarkana 1989, writ denied). A delay may be reasonable when it begins and later become unreasonable and breach the duty of good faith and fair dealing. Reasonable minds may sometimes differ as to when delay became unreasonable.

The Texas Supreme Court has struggled with the limitations problem since it first recognized a tort duty of good faith and fair dealing in the processing and payment of insurance claims. The Texas Supreme Court held in *Arnold* that the cause of action did not accrue on a breach of good faith claim until the underlying contract claims were finally resolved. *Arnold,* 725 S.W.2d at 168. In *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 829 (Tex. 1990), the Court recognized that its ruling on limitations in *Arnold* conflicted with its holdings in *Robinson* and *Moreno.* The *Murray* decision modified *Arnold* to realign it with *Robinson* and *Moreno.* *Murray* held that when an insurer wrongfully denies coverage, the denial is the injury producing event. The cause of action accrues when the insurance company "unreasonably fails to pay an insured under the policy." [3] *Murray,* 800 S.W.2d at 829.

---

**3.** *Murray* states that the cause of action for bad faith accrues when the insurance carrier unreasonably fails to pay an insured under the policy. *Murray* cites three cases from the Alabama Supreme Court. Those cases hold that the cause of action accrues when the insured learns of

facts which should put him on notice that the insurance company is acting in bad faith. *Murray,* 800 S.W.2d at 829. We are not certain whether the two standards are different. However, as a matter of public policy, we do not want to give insurance companies an incentive

The *Murray* decision recognized that additional problems arise when the insurance company sits on a claim without either paying it or denying:

> When ... there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be determined on a case-by-case basis. *See Safeco Ins. Co. of America v. Sims,* 435 So.2d 1219, 1222 (Ala.1983). Clearly, though, if an insurance company strings an insured along without denying or paying a claim, limitations will be tolled.

*Murray,* 800 S.W.2d at 828, n. 2. Our case bears some resemblance to the situation described in *Murray,* footnote 2. There is no evidence in the record that CNA strung TRICO out. By "strung out," we mean that there is no evidence that CNA continually promised to pay the claim in the near future if only TRICO would be patient. However, it is undisputed that CNA neither paid the entire claim in a timely fashion nor formally denied it. We shall analyze the evidence, according to the principles enunciated in *Murray,* to determine the point when TRICO's cause of action accrued.

The La Alta project burned on July 5, 1984. On August 28, 1984, CNA and TRICO reached a tentative agreement that the actual cash value of the loss was $973,929. CNA then declined to pay the claim in a lump sum. CNA offered to advance $650,-000 and to pay the remainder gradually as reconstruction work progressed. TRICO's adjuster wrote to CNA on November 1, 1984. He protested that the policy gave CNA no right to withhold any part of the settlement pending completion of repairs and no right to audit repair costs until after payment. On November 1, 1984, TRICO recognized that CNA was not complying with the policy.

CNA did not respond to the November 1, 1984 letter until January 18, 1985. CNA's response announced the rejection of TRICO's proof of loss. CNA did not deny coverage, but it repeated that it would not pay the balance of the loss until after TRICO paid the construction contractors and after CNA audited the expenditures. CNA's response reiterated a demand that TRICO had already rejected as unreasonable and in conflict with the terms of the policy.

TRICO's February 8, 1985 demand letter to CNA shows that TRICO knew it had a cause of action against CNA. TRICO expressed "surprise" that CNA refused to pay the actual cash value of the building loss. TRICO explained that due to CNA's stalling, the mortgage company was moving toward foreclosure on La Alta. The letter rejected CNA's proposal to pay only after stages of the reconstruction work were completed. The letter ended with a demand for payment and a threat to sue:

> The total sum of $1,323,600.50 [sic], less credit for any amounts already advanced by your company, is immediately due and payable under the terms of the policy. Any costs and legal fees incurred by further delay will be chargeable to the company.

No later than February 8, 1985, TRICO believed that CNA had unreasonably failed to pay under the policy, and was subject to a lawsuit.

We conclude that, under the facts of this case, TRICO's causes of action accrued when it received CNA's January 18, 1985 letter. Assuming that CNA had no right under the policy to withhold part of the settlement until after TRICO paid the contractors, CNA's refusal to pay unless TRICO complied with its demands constituted an unreasonable failure to pay under the policy. TRICO possibly could have filed suit in October 1984, when CNA initially refused to pay the whole loss, as required by the policy. When CNA repeated its refusal on January 18, 1985, CNA pro-

to deny coverage by internal memorandum and then wait weeks before notifying the insured. In this case, it is immaterial whether the statute of limitations started on January 18, 1985, or two weeks later. In a close case, a few days could be crucial. We interpret "unreasonably fails to pay" to mean the point when an insured learns of facts that would put a reasonable customer on notice that the insurer is acting in bad faith. Normally, the cause of action will accrue on the date the insured receives a denial of coverage notice from the insurance carrier.

claimed its violation of the policy and breached its duty of good faith and fair dealing in the processing and payment of TRICO's claim. TRICO's cause of action accrued when it received the letter.

■ TRICO argues that summary judgment on limitations is improper because the summary judgment evidence does not fix as a matter of law the specific date when its cause of action accrued. TRICO cites a recent medical malpractice case:

> When a defendant seeks a summary judgment on the ground that the plaintiff's cause of action is barred by the statute of limitations, it is the defendant's burden to conclusively establish the applicability of the statute.... Thus, the defendant must conclusively show the date on which the statute of limitations commenced.

*Jones v. Cross,* 773 S.W.2d 41, 42–43 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (citing *Delgado v. Burns,* 656 S.W.2d 428 (Tex.1983)).

The strong language in *Jones* about conclusively proving the specific date on which limitations began exaggerates the holding of *Delgado.* In *Delgado,* another medical malpractice case, the facts suggested two possible dates on which the plaintiff's cause of action may have accrued, one inside the limitations period and one outside. The Supreme Court held that the defendant could not win summary judgment, based on limitations, unless his summary judgment evidence showed on which date limitations commenced. *Delgado,* 656 S.W.2d at 429. TRICO's cause of action accrued the day it received the letter CNA sent on January 18, 1985. On January 31, 1985, TRICO and several other parties interested in the La Alta project held a "council of war" to plan their response to CNA's letter. TRICO must have received the letter before January 31, 1985. All of the possible dates between January 18 and January 31, 1985, are outside of the two-year period that runs back from March 20, 1987, the date TRICO filed its counterclaim. The problem that existed in *Delgado* is absent here. CNA has proved that limitations commenced

more than two years before TRICO filed its counterclaim.

■ Next, TRICO argues that its claims against CNA are continuing torts for which limitations did not begin until August 27, 1985. TRICO characterizes CNA's conduct as an unreasonable delay in payment rather than as a wrongful denial of coverage. TRICO asserts that unreasonable delay in payment is a continuing tort, analogous to false imprisonment. For a continuing tort, "the cause of action is not complete and does not accrue until the tortious acts have ceased." *Twyman v. Twyman,* 790 S.W.2d 819, 821 (Tex.App.—Austin 1990, no writ) (citing *Adler v. Beverly Hills Hospital,* 594 S.W.2d 153, 156 (Tex.Civ.App.—Dallas 1980, no writ)). TRICO argues that CNA's unreasonable delay ended on August 27, 1985, when CNA paid the $380,000 into the registry of the court. Only at that point did CNA's tortious acts cease, and only then did the cause of action accrue.

We decline to characterize CNA's refusal to pay as a continuing tort. That characterization would conflict with *Murray.* The *Murray* court held that, when an insurance carrier "unreasonably fails to pay an insured under the policy," the insurance carrier breaches its duty of good faith and fair dealing. *Murray,* 800 S.W.2d at 829. The tort is complete at that point. *Murray,* 800 S.W.2d at 828. The fact that damages may accumulate after the point of unreasonable failure to pay does not toll limitations. *Murray,* 800 S.W.2d at 828. We reject TRICO's claim that a distinction exists between "unreasonable delay in paying" and "unreasonable failure to pay." When an insurance company unreasonably delays paying a claim it also unreasonably fails to pay. Nothing in *Murray* suggests that the unreasonable failure must be perpetual for the cause of action to accrue.

There is an additional logical flaw in applying continuing tort rules to an insurance company's unreasonable failure to pay under a policy. The cause of action for continuing torts does not accrue until the tortious acts cease. *Twyman,* 790 S.W.2d at 821. Until a cause of action accrues, a lawsuit is premature. If an insurance com-

pany assured a policyholder that it intended to honor a claim but perpetually failed to pay, the tortious act would never end. The cause of action would never accrue. The insured could never maintain a lawsuit. We hold that TRICO's cause of action for bad faith accrued in January 1985, when CNA unreasonably failed to pay under the policy. We reject all of TRICO's arguments that the statute of limitations commenced sometime after March 20, 1985. Accordingly, we overrule all of TRICO's contentions that the applicable two-year statute of limitations did not bar its common law bad faith claim when TRICO filed its counterclaim on March 20, 1987. We turn our attention to TRICO's contention that a four-year limitations period applies to its claims under Texas Insurance Code article 21.21.

### Limitations Period Applicable To Article 21.21 Claims

■ Texas Insurance Code article 21.21 lists a multitude of theories that can support a cause of action against an insurance company. TRICO alleges three theories. All three relate to the same conduct on the part of CNA—unreasonable failure to pay under the insurance policy. The current limitations period for article 21.21 claims is two years. TEX.INS.CODE ANN. art. 21.21, § 16(d) (Vernon 1981). However, before April 4, 1985, article 21.21 contained no express limitations period.[4] In *Gibbs v. Main Bank of Houston*, 666 S.W.2d 554, 558 (Tex.App.—Houston [1st Dist.] 1984, no writ), the court held that the four-year statute of limitations governed an article 21.21 action that arose from a refusal to honor a title insurance policy. The court looked to the underlying insurance policy and applied the general statute of limitations for actions to enforce written contracts. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986). TRICO points out that a contract in writing, an insurance policy, underlies its article 21.21 claims against CNA. TRICO argues that if its

causes of action against CNA accrued before April 4, 1985, as CNA contends, then TRICO's article 21.21 claims are grandfathered under the four-year statute. If the four-year statute applies, TRICO's article 21.21 claims were filed timely.

We have already concluded that TRICO's causes of action accrued no later than January 31, 1985. TRICO gets the benefit of the limitations period that prevailed at that time. *Nash v. Carolina Casualty Ins. Co.*, 741 S.W.2d 598, 601 (Tex.App.—Dallas 1987, writ denied). We must decide which limitations period applied to an article 21.21 claim in January 1985. When a statute contains no express limitations period, courts look to analogous causes of action for which an express limitations period is available. *La Porte Constr. Co. v. Bayshore Nat'l. Bank*, 805 F.2d 1254, 1256–57 (5th Cir.1986). The key question is whether to analogize article 21.21 claims to general tort actions, for which a two-year limitations period applied, or to actions for breach of a written contract, for which a four-year limitations period applied. *See* TEX.REV.CIV.STAT.ANN. arts. §§ 5527, 5528 (now codified as TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.003, 16.004 (Vernon 1986)). Texas appellate courts interpreting article 21.21 have repeatedly analogized it to an action for breach of a written contract. *See Alvarez v. American Gen. Fire & Casualty Co.*, 757 S.W.2d 156, 158 (Tex.App.—Corpus Christi 1988, no writ); *Nash*, 741 S.W.2d at 601; *Gibbs*, 666 S.W.2d at 558. As a result, the cases have applied the four-year limitations period normally available for actions to enforce a written contract. *Alvarez*, 757 S.W.2d at 158; *Nash*, 741 S.W.2d at 601; *Gibbs*, 666 S.W.2d at 558.

The *Gibbs-Nash-Alvarez* line of cases began in 1984, before *Arnold* brought the common law tort of bad faith to Texas. If *Gibbs* were decided today as a case of first impression, the court might analogize the article 21.21 claim to a tort claim for bad

---

**4.** The pre-April 4, 1985 statute contained a provision that excluded liability for damages incurred more than two years before the filing of the lawsuit. TEX.INS.CODE ANN. art. 21.21, § 16(d) (Vernon 1981). The provision did not bar causes of action that accrued more than two years before the filing of the claim.

faith, which has a two-year limitations period. *See Murray,* 800 S.W.2d at 826. Nonetheless, the analogy to an action on a written contract now represents the prevailing authority in Texas. We feel compelled to follow it. We conclude that the four-year statute of limitations applies to Texas Insurance Code article 21.21 causes of action that accrued before April 4, 1985. Since TRICO's cause of action accrued no later than January 31, 1985, TRICO's article 21.21 claims are grandfathered under the four-year statute. Limitations do not bar the article 21.21 claim. The trial court erred in granting CNA summary judgment on the article 21.21 claim. We sustain TRICO's sole point of error.

We reverse the summary judgment and remand the case for trial on the article 21.21 claim.