MCILROY V. STATE FARM 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-453-CV





SHARON McILROY,



 APPELLANT


vs.





STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 436,704, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 




 This is a summary-judgment case based on limitations. Sharon McIlroy, appellant,
brought suit against State Farm Mutual Automobile Insurance Company, appellee, alleging that
State Farm engaged in unfair claim-settlement practices by: (1) breaching the common-law duty
of good faith and fair dealing, and (2) violating Tex. Ins. Code Ann. arts. 21.21, 21.21-2 (1981
& Supp. 1992), 28 Tex. Admin. Code §§ 21.201-.205 (1988 & Supp. 1992), and the Deceptive
Trade Practices-Consumer Protection Act (DTPA), Tex. Bus. & Com. Code Ann. § 17.50 (1987
& Supp. 1992). (1) State Farm moved for summary judgment on the ground that the applicable two-year statute of limitations barred McIlroy's bad-faith claims. The trial court granted State Farm's
motion for summary judgment. In four points of error, McIlroy challenges that judgment in this
Court. We will affirm.



BACKGROUND


 On August 21, 1986, McIlroy was driving her roommate's car when she was struck
by a pick-up truck driven by Jayson Danek, an uninsured motorist. McIlroy was covered by two
insurance policies issued by State Farm, one insuring McIlroy's own car and the other insuring
her roommate's car. Both policies contained personal-injury-protection (PIP) coverage and
uninsured-motorist coverage.

 In an attempt to recover for her injuries resulting from the accident, McIlroy filed
suit against Danek in February 1988; however, she did not file suit against State Farm at that
time. Instead, on April 14, 1988, McIlroy sent a letter to State Farm demanding $20,000 in
uninsured-motorist benefits and giving State Farm thirty days to respond. On May 6, 1988, State
Farm offered $7,000 to settle the claim. On May 26, 1988, McIlroy rejected State Farm's offer
and extended her offer of $20,000 for another thirty days. On June 13, 1988, State Farm
responded by raising its offer to $7,500 and by sending McIlroy a check in the amount of $1,135
for the payment of PIP claims she had made. There is no evidence of further negotiations.

 McIlroy first filed suit against State Farm on August 29, 1988, alleging that she
was contractually entitled to recover damages for her injuries based on the PIP and uninsured-motorist provisions of the subject insurance policies. At that time, however, she did not assert
any "bad-faith" claims based on unfair claim-settlement practices.

 On July 19, 1990, McIlroy amended her pleadings to allege her extra-contractual
bad-faith claims against State Farm. She alleged that State Farm had engaged in unfair claim-settlement practices, had breached its common-law duty of good faith and fair dealing, had
violated certain provisions of the Insurance Code and the DTPA, and had violated certain rules
and regulations of the State Board of Insurance.

 On October 10, 1990, based on facts deemed admitted, the trial court rendered a
partial summary judgment against Danek, the uninsured motorist. The judgment awarded McIlroy
$125,000 in damages for her bodily injuries.

 On January 16, 1991, in exchange for $41,000, McIlroy released State Farm from
the contractual claims she had asserted under the PIP and uninsured-motorist provisions of the
subject insurance policies. However, she expressly retained the right to pursue her bad-faith
claims against State Farm for unfair claim-settlement practices. Thereafter, on January 28, 1991,
the trial court signed an order dismissing McIlroy's contractual claims.

 In February 1991, State Farm filed a motion for summary judgment, arguing that
McIlroy's bad-faith claims were barred as a matter of law by limitations. State Farm based its
motion on McIlroy's admission that State Farm had, as of June 25, 1988, unreasonably delayed
payment of her claim for insurance benefits. State Farm argued that limitations began to run on
that date for McIlroy's bad-faith claims; therefore, because McIlroy did not assert any such claims
until July 19, 1990, more than two years later, her claims were barred by the two-year statute of
limitations.

 On March 7, 1991, the trial court granted State Farm's motion as to all of
McIlroy's allegations except for two alleged statutory violations pleaded in her Eighth Amended
Original Petition. The trial court later severed out these two claims in order to finalize the
summary judgment as to the rest of McIlroy's allegations. McIlroy has appealed the final
summary judgment to this Court.



STANDARD OF REVIEW


 The standards for reviewing a summary judgment are well established:



1. The movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to judgment as a matter of
law.


2. In deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the non-movant will be taken as true.


3. Every reasonable inference must be indulged in favor of the non-movant and
any doubts resolved in its favor.



Nixon v. Mr. Property Mgt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). There is no dispute that
this case is governed by a two-year statute of limitations. See Tex. Civ. Prac. & Rem. Code Ann.
§ 16.003(a) (1986); Tex. Bus. & Com. Code Ann. § 17.565 (1987); Tex. Ins. Code Ann. art.
21.21, § 16(d) (Supp. 1992). Further, there is no dispute that McIlroy made no allegations
against State Farm based on bad faith until July 19, 1990. Therefore, in order to uphold the
judgment in this case, we must determine that the summary judgment evidence establishes as a
matter of law that limitations began to run on McIlroy's bad-faith claims before July 19, 1988.



STATUTE OF LIMITATIONS


 In her Eighth Amended Petition, McIlroy alleged the following:



 Not withstanding [sic] the fact that there was no reasonable basis for delay
in the payment of Plaintiff's claims, Defendant, State Farm Mutual Automobile
Insurance Company, from a point in time occurring on or after July 19, 1988, and
up until January 10, 1991 refused to make timely payment of all amounts due
Plaintiff under the personal injury protection provisions or any of the amounts due
Plaintiff under the uninsured motorists provisions of the terms of such insurance
policies described above.



McIlroy further alleged that by engaging in such conduct, State Farm had: (1) breached the
common-law duty of good faith and fair dealing, and (2) violated certain provisions of the DTPA
and Insurance Code, as well as certain State Board of Insurance regulations. Based on these
allegations, McIlroy argues in her brief that, because she did not assert any bad-faith claims
against State Farm which arose before July 19, 1988, her assertion of unfair claim-settlement
practices against State Farm on July 19, 1990, was within the two-year statute of limitations.

 In response, State Farm points to McIlroy's answer to its request for admission
number 27:



27. As of June 25, 1988, State Farm had unreasonable [sic] delayed payment of
Plaintiff's claim.


 ANSWER: Admit



State Farm argues that, through this admission, McIlroy established as a matter of law that
limitations began to run on her bad-faith claims on June 25, 1988, and expired on June 25, 1990,
approximately three to four weeks before McIlroy asserted her bad-faith claims for the first time.

 In her brief, McIlroy concedes that the above admission bars at least part of her
cause of action. She states that when she admitted that State Farm had unreasonably delayed
payment of her "claim" as of June 25, 1988, she was referring only to her claim for PIP benefits,
and not her claim for uninsured-motorist benefits. Therefore, she argues, the above admission
bars only her bad-faith claims with regard to the payment of her PIP benefits, and does not bar
such claims as they relate to the payment of her uninsured-motorist benefits.

 As the parties have presented the case to this Court, the pivotal issue is whether the
above admission on the part of McIlroy referred to the unreasonable delay in the payment of both
her PIP and uninsured-motorist benefits, or just her PIP benefits. Indeed, McIlroy conceded at
oral argument that if her admission can be read as a matter of law to refer to the unreasonable
delay in the payment of her uninsured-motorist benefits, then her appeal must fail.

 As discussed above, McIlroy's attorney sent to State Farm a letter dated April 14,
1988, which included the following:



 As you are aware, Mr. Danek was an uninsured motorist and therefore, the
above referenced policy provides coverage for Ms. McIlroy's injuries.


 . . . .


 This letter will also serve as an offer to settle the above style [sic] claim
against the uninsured motorist coverage provided by the above referenced policy
for the sum of Twenty Thousand and No/100 Dollars ($20,000.00). This offer of
settlement will remain open for 30 days at which time it will automatically be
withdrawn if not accepted.



(Emphasis added).

 State Farm responded by offering $7,000, which prompted the following letter from
McIlroy on May 26, 1988:



This letter will notify you that I have discussed your offer of settlement in the
amount of $7,000.00 as per your letter of May 6, 1987, with my client, Sharon
McIlroy. My client has rejected such offer of settlement. This letter will serve as
notice to you that the offer of settlement as set out in my letter of April 14, 1988,
will remain open for 30 days from receipt of this letter, otherwise I will amend the
suit presently pending and sue State Farm Insurance Company.


In the event it is necessary to file suit, I will also assert a claim for the unpaid
personal injury protection benefits which have previously been refused by your
company, a claim for benefits under the uninsured motorist portion of Ms.
McIlroy's insurance policy, and a claim for attorney's fees . . . .



(Emphasis added).

 State Farm responded to McIlroy with the following letter on June 13, 1988:



We are in receipt of your letter dated May 26, 1988. Your reticence, with respect
to negotiating a settlement in this case, is puzzling.


Let me reaffirm that it is our desire to conclude Ms. McIlroy's claim in an
amicable fashion. To this end, we are elevating our offer of settlement to
$7,500.00.


Additionally, please find a draft in the amount of $1,135.00 attached hereto. This
reflects the balance of your client's medical expenses and lost wages. Further
Personal Injury Protection payments will require an independent medical
examination at our behest.



These letters indicate that during the months of April, May, and June 1988, McIlroy was
demanding $20,000 in uninsured-motorist benefits, and State Farm was offering only $7,500. 
Further, the letters show that McIlroy intended to file suit against State Farm if her demand was
not met by June 25, 1988.

 This brings us to State Farm's First Request For Admission To Plaintiff and
McIlroy's responses thereto:



REQUESTS FOR ADMISSION



 1. On April 14, 1988, Plaintiff, through her attorney Russell Daves, demanded
$20,000.00 for the settlement of her uninsured motorist claim.


 ANSWER: Admit.


 2. Said demand stated that it would be withdrawn if not accepted within thirty
(30) days.


 ANSWER: Admit.


* * * *



 4. On May 6, 1988, State Farm responded to said demand.


 ANSWER: Deny.


 5. In responding to said demand, State Farm did not offer to pay $20,000.00.


 ANSWER: Admit.


 6. In responding to said demand, State Farm did offer to pay $7,000.00.


 ANSWER: Deny.


* * * *



 8. On May 26, 1988, Plaintiff through her attorney, Russell Daves responded
to State Farm's offer of May 6, 1988.


 ANSWER: Admit.


 9. In that response, Plaintiff did not reduce her settlement demand.


 ANSWER: Admit.


10. In that response Plaintiff did extend her offer of April 14, 1988 for an
additional thirty (30) days.


 ANSWER: Admit.


* * * *



13. On June 13, 1988, State Farm responded to Plaintiff's renewed demand of
May 26, 1988.


 ANSWER: Admit.


14. In that response State Farm did not accept Plaintiff's demand.


 ANSWER: Admit.


15. In that response State Farm did raise its offer to $7,500.00.


 ANSWER: Admit.


* * * *



18. As of June 25, 1988, State Farm had not accepted Plaintiff's settlement
demand.


 ANSWER: Admit.


* * * *



25. As of June 25, 1988, Plaintiff believed that State Farm had delayed payment
of her claim.


 ANSWER: Admit.


* * * *



27. As of June 25, 1988, State Farm had unreasonable [sic] delayed payment of
Plaintiff's claim.


 ANSWER: Admit.


(Emphasis added).

 We conclude that, when taken in the context of all the requests for admission and the
correspondence between the parties, request for admission number 27 clearly requested McIlroy
to admit that as of June 25, 1988, State Farm had unreasonably delayed payment of her claim for
uninsured-motorist benefits. Indeed, McIlroy's own letters in April and May make reference to
uninsured-motorist benefits. Further, when taken in context, the phrase "Plaintiff's claim" in
request for admission number 27 clearly included McIlroy's claim for uninsured-motorist benefits. 
The request for admission cannot reasonably be read any other way.

 A cause of action under the common-law duty of good faith and fair dealing accrues,
and the statute of limitations begins to run, when the insurance company "unreasonably fails to
pay an insured under the policy." Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 829
(Tex. 1990). Further, "[w]hen an insurance company unreasonably delays paying a claim it also
unreasonably fails to pay." Tectonic Realty Inv. Co. v. CNA Lloyd's of Tex. Ins. Co., 812 S.W.2d
647, 654 (Tex. App. 1991, writ denied). A cause of action for unfair claim-settlement practices
based on violations of the DTPA, the Insurance Code, and the Texas Administrative Code must
be brought within two years of the date when the unfair practice occurred. See Tex. Bus. & Com.
Code Ann. § 17.565 (1987); Tex. Ins. Code Ann. art. 21.21, § 16(d) (Supp. 1992). We have
concluded above that McIlroy, by her own admission, conclusively established as a fact that State
Farm had unreasonably delayed payment of her uninsured-motorist benefits no later than June 25,
1988. Accordingly, her claims for unfair claim-settlement practices had accrued by June 25,
1988. Nonetheless, she did not assert such causes of action against State Farm until July 19,
1990, more that two years after that date. Thus, McIlroy's bad-faith claims were barred by
limitations. (2)


CONCLUSION


 Based on our foregoing discussion, we conclude that McIlroy's claims based on State
Farm's alleged unfair claim-settlement practices were barred by limitations as a matter of law. 
Therefore, we overrule her four points of error and affirm the trial court's judgment.



 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: August 12, 1992

[Do Not Publish]

1.   We will refer to McIlroy's common law and statutory causes of action collectively as
her "bad-faith claims."
2. [2]  We note that in her Eighth Amended Petition, McIlroy alleged nine separate statutory
violations on the part of State Farm. The trial court denied State Farm's motion for summary
judgment as to two of those alleged statutory violations, and those allegations were severed
into another cause. The trial court granted the motion for summary judgment as to the other
seven.


 McIlroy does not make separate arguments based on each of the seven alleged statutory
violations; rather, she treats the seven allegations as a group and discusses only the concept of
unreasonable delay in payment. She seems to assume that an unreasonable delay in payment
by State Farm would start limitations as to all seven allegations; therefore, we do the same.