Clem Cecil MARTIN, Appellant,

v.

GULF INSURANCE GROUP, Appellee.

No. 05–88–00826–CV.

Court of Appeals of Texas, Dallas.

May 31, 1989.

Rehearing Denied July 12, 1989.

Publication ordered May 9, 1990.

---

Gary Johnson, Dallas, for appellant.

Stephen E. Friend, Robert D. Allen, Dallas, for appellee.

Before CARVER,[1] STEWART and ROWE, JJ.

CARVER, Justice.

Clem Cecil Martin appeals from a take-nothing judgment following a jury verdict

upon his worker's compensation claim. We affirm.

Martin claimed that an injury to his right testicle on December 10, 1985 "caused, accelerated, aggravated, incited and/or exacerbated a cancerous condition." Gulf responded that Martin's cancer pre-existed the claimed injury and that the cancer's spreading through his body was natural rather than traumatic. Upon a charge in ordinary form, the jury's verdict found that Martin sustained an injury which was *not* the producing cause of any permanent or temporary incapacity, yet, such injury reasonably required medical care.

The parties entered a verbal stipulation into the record that Martin had incurred bills of $51,713.06 for treatment of his cancer. The supplier of medical services, plus a brief description of the services, and the costs of such services were transferred to a chart and the chart was admitted as Martin's exhibit 1. Following the stipulation and the introduction of the chart, Martin was examined by his own counsel thusly:

Q. Now Clem, is it your understanding that Gulf Insurance Company has agreed that these bills are for necessary treatment of your cancer and the bills are reasonable; you understand that?

A. Yes, sir.

Q. You also understand that Gulf Insurance Company is not agreeing that these bills are related to the injury of December 10, 1985?

A. Yes, sir.

Q. And that is what we are here about? (no answers by witness shown in record)

Martin's appeal urges: (1) that he was entitled to judgment on the verdict for his cancer bills; (2) that the finding of no incapacity was against the overwhelming weight of the evidence; and (3) that the evidence, as a matter of law, showed that Martin's injury was the producing cause of incapacity.

1. The Honorable Spencer Carver, Justice, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

Both parties concede that a determination of the relation, if any, between Martin's injury on December 10, 1985, or thereafter, and Martin's cancer, rested upon expert opinion. Martin relied upon Dr. Froelich who testified that he saw Martin on January 20, 1986, heard Martin's history of the injury, observed that the testicle was swollen and hard, and that the scrotum was discolored. Froelich diagnosed "epididymis" and "orchitis" and sent him, in turn, to Drs. Cavanaugh, Whittemore and Dr. Mennel, whose reports to Froelich detailed Martin's subsequent diagnosis of cancer in the testicle, the testicle's surgical removal, the spreading of the cancer and Martin's other cancer treatment. As to Martin's injury causing the cancer, Dr. Froelich testified:

Q. So you are not testifying today that an injury caused—an injury Martin sustained in this case, or that he said he sustained, caused the cancer; are you?

A. No.

Q. Is it your opinion that he had the cancer prior to any injury?

A. Probably, yes. Probably.

As to Martin's injury causing the spreading of his cancer, Dr. Froelich testified:

Q. As I understand it, Doctor, since it was not extended through the tunica albuginea, the spread of this disease was in its normal fashion up through the lymphatic nodes and everything, and that metastasized; is that correct?

A. I would—yes.

Q. Okay. With that in mind, Doctor, isn't it true that it is just as probable that the trauma had no effect?

A. A probability that the trauma had no effect.

Q. So it is just as likely that it had effect as that it did not have an effect?

A. I wouldn't make a—I don't know which was more probable. I'll first say that they—both probabilities exist.

Gulf relied upon Dr. Brown, who testified that he was an oncologist who studied cancer, how it forms, how it spreads and how it is treated. Dr. Brown described his review of all the medical, surgical, and therapy records of Martin, including those kept by Doctors Froelich, Cavanaugh, Whittemore, O'Brien, and Radiology Associates, plus Fannin Community Hospital and Baylor Hospital. As to Martin's injury causing his cancer, Dr. Brown testified:

Q. Based upon the history and medical records that you have reviewed, and based upon your experience, education and training, do you have an opinion, based on reasonable medical probability, as to whether or not the trauma Mr. Martin allegedly received was the cause of his cancerous condition?

A. No. Cancer is not caused by trauma.

Q. Sir, do you have an opinion, based upon the history given to you in the medical records, and based on your experience, training and education, as to whether or not the alleged trauma, as explained by Mr. Martin, aggravated or accelerated Mr. Martin's cancerous condition?

A. No [sic] cancer is not worsened by a trauma—

Q. One final question, sir, and I will go on with another point. Based on the history that you have heard in the medical records, and based upon your experience, training and education, and based upon your reasonable medical probability, do you have an opinion as to whether or not the trauma allegedly received by Mr. Martin had any adverse effect upon the natural cause of the cancerous disease?

A. Trauma does not in any way influence the cause of acceleration or the spread or the natural cause of cancer.

 The jury's finding that the injury casually produced no permanent or temporary incapacity and the finding that the injury reasonably required medical care are in apparent conflict. It is the duty of the court, both trial and appellate, to resolve apparent conflicts in the light of the evidence before the jury. *See Luna v. Southern Pacific Transp. Co.*, 724 S.W.2d 383, 384 (Tex.1987). In light of the evidence, the trial court correctly resolved the apparent conflict because: (1) Martin was undisputed in his testimony that on December

10, 1985 he straddled a board during a slip in his stance and the board struck his testicle, thus supporting the jury's finding of injury; (2) Martin's expert equivocated, but Gulf's expert strongly negated, whether the injury caused or aggravated or spread the cancer in Martin, thus supporting the jury's finding of no permanent or temporary incapacity from the injury; and (3) Martin was undisputed in his testimony that the injury hurt, made him sick to his stomach, and caused swelling in a sequence that justified his seeking medical care. However, Martin's failure to offer evidence, or a stipulation, as to any "injury" care, apart from "cancer" care, justified the trial court's denial of any relief. Put another way, the jury's findings as supported by the record say that Martin had a pre-existing cancer in his right testicle which eventually spread throughout his body, generating cancer care totaling $51,-713.00. The same findings, supported by the same record, say that Martin's cancerous testicle was struck by a board he straddled at work on December 10, 1985, causing pain, nausea, and swelling, justifying seeking medical care and that this medical care was not included in the chart, Plaintiff's exhibit 1, was not proved by any other evidence, and was not inquired about in the Court's charge. We hold that the trial court correctly resolved the apparent conflict in the jury's findings and correctly denied judgment on the verdict.

■■■ Upon the same evidence above abstracted from the record, we conclude that the jury's findings of no permanent or temporary incapacity are not against the overwhelming weight of the evidence. However, Martin additionally argues a new theory under this same point. Martin now urges in his brief, and for the first time in the record, that his incapacity from the cancer arose from his own doctor's misdiagnosis; that is, the failure to recognize his cancer was the producing cause of his incapacity because it precluded beginning treatments for cancer sooner with some greater prospects for relief.

We reject this theory factually because neither doctor in the court was asked, or

responded, that, in reasonable medical probability, such were the facts or results. We also reject this theory because neither Martin's opponent, the trial court, nor the jury were given the opportunity to try such issues. See Akin v. Dahl, 661 S.W.2d 911, 913 (Tex.1983); Brown v. American Transfer & Storage Co., 601 S.W.2d 931, 938 (Tex.1980). We find that the verdict was not against the overwhelming weight of the evidence.

■■■ Upon the same evidence above abstracted from the record, we likewise conclude that the evidence did not show, as a matter of law, that Martin's injury was the producing cause of his incapacity. For this point, Martin reurges his theory, raised for the first time in this Court, that misdiagnosis and delayed treatment of his cancer was proven "as a matter of law" to be the cause of his incapacity. We cannot agree because no doctor so testified, either to the misdiagnosis or the result therefrom. Such conclusions are the subject of medical expertness, Hart v. Van Zandt, 399 S.W.2d 791, 792 (Tex.1966), and this Court declines to claim such qualifications to so hold as a matter of law. Even if the Court was tempted by the theory, or was tempted to be persuaded by the evidence to act as the medical expert, we would be constrained to hold, and do hold, that a fair trial requires a theory to be first raised in the trial court, the evidence upon such theory submitted in the trial court, and evidence first weighed by the fact-finder in the trial court. Akin, supra and Brown, supra, so hold and we obey.

AFFIRMED.