The UPJOHN COMPANY, Appellant,

v.

William R. FREEMAN, Martha Freeman, Individually and as Next Friend and Guardian of Sean Perry Freeman, a Minor Child, Suzanne E. Freeman, as Next Friend and Guardian of Leah Suzanne Freeman and William Lance Freeman, Minor Children, and Lori Yvonne Freeman, Appellees.

No. 05–93–00468–CV.

Court of Appeals of Texas, Dallas.

Aug. 26, 1994.

Rehearing Denied Oct. 4, 1994.

Stephen E. Scheve and Robert H. McCully, Kansas City, MO, Richard L. Josephson, Houston, Earl B. Austin and Lynn S. Switzer, Dallas, for appellant.

Coyd Randal Johnson and Jeff Kaplan, Martin Lowy, Paul C. Watler, Dallas, for appellees.

Before BAKER, THOMAS and BURNETT, JJ.

## OPINION

BURNETT, Justice.

William R. Freeman and his family sued The Upjohn Company for negligence and products liability for injuries resulting from Freeman's use of Halcion, a prescription sleeping pill.[1] Freeman alleged that taking Halcion caused him to be psychotic, paranoid, and delusional; resulted in memory loss and attempted suicides; and caused him to kill Donnie Hazelwood. Freeman sought damages for these injuries, and the Family sued for loss of consortium and loss of support.

At the close of evidence, the trial court instructed a take-nothing verdict in favor of Upjohn on Freeman's claims for lost wages and diminished earning capacity. The jury found Upjohn grossly negligent in dispensing Halcion with a marketing defect. The jury

---

1. We will refer to William R. Freeman, individually, as Freeman. We will refer to Freeman's family as the Family. When necessary, we will refer to Freeman and the Family, collectively, as the Freemans.

awarded zero damages to Freeman and awarded actual and exemplary damages to the Family. The jury awarded damages for loss of consortium to Martha, Sean, Leah, and Lori Freeman. The jury awarded loss-of-support damages to Martha, Sean, Leah, and Lance. With respect to the jury's award for loss of support, the trial court entered a take-nothing judgment notwithstanding the verdict in favor of Upjohn.

Upjohn appeals the jury verdict, asserting six general points of error. Upjohn contends that (i) the statute of limitations bars the Family's claims; (ii) the actual and exemplary damage awards are not sustainable as a matter of law; and (iii) the evidence supporting the causation findings is legally and factually insufficient. Upjohn further contends that the trial court erred in (i) submitting the charge to the jury, (ii) admitting certain testimony and exhibits into evidence, and (iii) calculating the damage award.

The Family appeals the trial court's judgment, asserting two cross-points of error. The Family contends that the trial court erred in (i) entering a judgment n.o.v. regarding the jury's award for loss of support and (ii) applying settlement credits because of settling defendants.

We conclude that the Family pleaded sufficient facts to put the continuing-tort rule in issue; therefore, Upjohn did not conclusively establish that Freeman's cause of action accrued outside the statutory period. The jury found that Freeman did not suffer an injury because of Upjohn's negligence or product. Consequently, the jury's finding precludes the Family's cause of action for loss of consortium as a matter of law. Finally, we hold that there is no recovery for loss-of-support damages in a personal-injury claim as a matter of law. We reverse the trial court's judgment and render a take-nothing judgment for Upjohn.

## STATUTE OF LIMITATIONS

In point of error one, Upjohn contends that the statute of limitations bars the Family's causes of action. Upjohn asserts that the Family did not file suit within the statutory period and did not secure jury findings sufficient to invoke the discovery rule. The Family maintains that Upjohn did not establish that Freeman's cause of action accrued more than two years before suit was filed. The Family contends that the continuing-tort rule applies to injuries resulting from the use of prescription medication. The Family further asserts that the children's legal disability of minority precludes applying limitations to their claims.

Texas law recognizes a cause of action for the loss of spousal and parental consortium. *Reagan v. Vaughn,* 804 S.W.2d 463, 466 (Tex.1990), *clarified on reh'g,* 804 S.W.2d at 467 (1991); *Whittlesey v. Miller,* 572 S.W.2d 665, 667 (Tex.1978). However, such a cause of action is extinguished by the expiration of the statute of limitations on the injured family member's personal-injury claim. *See Reagan,* 804 S.W.2d at 466; *Work v. Duval,* 809 S.W.2d 351, 354 (Tex. App.—Houston [14th Dist.] 1991, no writ). The parties agree that the applicable statute of limitations for the family member in a personal-injury case based on negligence and strict products liability is two years. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 1986). Therefore, the Family must have brought suit for loss of consortium not later than two years after the date that Freeman's cause of action accrued.

Because the statute of limitations is an affirmative defense, Upjohn bore the initial burden of pleading and proving its plea of limitations. TEX.R.CIV.P. 94; *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988); *Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93, 99 (Tex.Civ. App.—Amarillo 1971, writ ref'd n.r.e.). Upjohn pleaded limitations. At the close of evidence, Upjohn moved for a directed verdict, asserting a limitations defense. The trial court denied Upjohn's motion. To prevail on appeal, Upjohn must demonstrate that the record evidence conclusively proves, as a matter of law, that the Family's causes of action accrued more than two years before suit was filed. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). Accordingly, Upjohn must establish the date on which Freeman's cause of action accrued and the date on which suit was filed. *Intermedics,*

*Inc. v. Grady,* 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

 Generally, a cause of action accrues when the wrongful act effects an injury, regardless of when the plaintiff learns of the injury. *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). If the act itself constitutes an invasion of the plaintiff's legally protected right or interest, then the cause of action accrues when the act occurred. But if the act was not a legal transgression, then the claim arises when an actual injury results. *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967); *see* 50 TEX.JUR.3d *Limitation of Actions* § 58 (1986).

 Here, Upjohn's sale of Halcion was a lawful act because it did not constitute a legal injury, that is, an injury giving rise to a cause of action due to an invasion of some right of Freeman. *See Atkins,* 417 S.W.2d at 153. Therefore, Freeman's personal-injury claim resulting from his use of Halcion arose only when he sustained damages. *See Atkins,* 417 S.W.2d at 153; *see also Cherry v. Chustz,* 715 S.W.2d 742, 745 (Tex.App.—Dallas 1986, no writ) (claims based on strict products liability arise on date of injury).

 Typically, the limitations period begins to run when the claim accrues or, as in this case, when damages are sustained. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 829 (Tex.1990); *see Parker v. Yen,* 823 S.W.2d 359, 365 (Tex.App.—Dallas 1991, no writ). However, an exception to this rule is found with continuing torts. *See Adler v. Beverly Hills Hosp.,* 594 S.W.2d 153, 154 (Tex.Civ.App.—Dallas 1980, no writ). A cause of action for a continuing tort does not accrue until the defendant's tortious act ceases. *Tectonic Realty Inv. Co. v. CNA Lloyd's of Tex. Ins. Co.,* 812 S.W.2d 647, 654 (Tex. App.—Dallas 1991, writ denied).

 The Freemans allege that their claims are based on the *ongoing injury* to Freeman due to his *continued use* of Halcion. The Freemans urge that the limitations period did not begin to run until Freeman stopped taking the drug because he remained a "prisoner" of the side-effects of Halcion.

The concept of *continuous injury* originated in trespass-to-land and nuisance cases and has been expanded to include false-imprisonment cases. *See Creswell Ranch & Cattle Co. v. Scoggins,* 15 Tex.Civ.App. 373, 39 S.W. 612, 614 (1897); *Adler,* 594 S.W.2d at 155. In *Adler,* this Court viewed the entire period of detention as one continuing tort for which a single cause of action accrues when the imprisonment ceases. *Adler,* 594 S.W.2d at 154. We reasoned that each day of imprisonment may be understood to create a separate cause of action. Therefore, to avoid multiplicity of suits, the cause of action for false imprisonment is not complete and does not accrue until the detention ends. *Adler,* 594 S.W.2d at 155. Accordingly, the plaintiff may wait and bring a single suit for the whole period of imprisonment. *Adler,* 594 S.W.2d at 156; *see* 54 C.J.S. *Limitations of Actions* § 177 (1987).

 In the present case, the wrongful conduct is the negligent sale of Halcion in a defective condition. Upjohn's wrongful conduct became actionable when Freeman used Halcion in a manner that caused him injury. As long as Freeman (unaware of the consequences) continued using Halcion, Upjohn's conduct continued with respect to Freeman. However, a continuous tort involves not only continuing wrongful conduct, but continuing *injury* as well. *See Adler,* 594 S.W.2d at 155–57; *Twyman v. Twyman,* 790 S.W.2d 819, 821 (Tex.App.—Austin 1990), *rev'd on other grounds,* 855 S.W.2d 619 (Tex.1993). In a continuing-tort case, the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops. *Arquette v. Hancock,* 656 S.W.2d 627, 629 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.); *Adler,* 594 S.W.2d at 155.

 If Upjohn's conduct caused a continuing injury that did not end until Freeman stopped taking the drug, then the continuing-tort rule may apply. Continued use of an injury-producing medication may be a continuing tort. *See Gatling v. Perna,* 788 S.W.2d 44, 46 (Tex.App.—Dallas 1990, writ denied). As long as Upjohn's conduct continued effecting injury to Freeman, each injury may be understood to create a separate

cause of action; therefore, Freeman's cause of action for damages was not complete and did not accrue until the wrongful conduct ended. Consequently, Freeman may bring a single suit for the period of time he sustained injuries from his use of Halcion. *See Adler,* 594 S.W.2d at 156.

■ On the other hand, if Freeman's use of Halcion caused one distinct injury regardless of his continued use, the continuing-tort rule is inapplicable. Upjohn's sale of a defective product is not actionable unless it causes injury to a plaintiff. *Atkins,* 417 S.W.2d at 153; *Cherry,* 715 S.W.2d at 745. Once Freeman's use of the product (although still defective) no longer results in injury to him, Freeman's claim for damages accrues from that point. *Cf. Tectonic,* 812 S.W.2d at 654.

With respect to damages resulting from prescription medication, there may be either a continuing injury about which the plaintiff complains or a single injury despite continued use of the drug. Therefore, the continuing nature of the present tort is determined by the complained-of injury. If Freeman alleged that his use of Halcion caused a continual injury until he stopped taking the drug, the Freemans should not be required to bring suit until that conduct ends and Freeman's cause of action accrues. *See Adler,* 594 S.W.2d at 156.

Upjohn responds that, until this appeal, the Freemans have always argued that Halcion caused two specific, identifiable injuries: Freeman's murder of Donnie Hazelwood and his immediate incarceration for that crime. The Freemans reply that Freeman unknowingly suffered a continuing injury from his extended use of Halcion. We examine the petition to determine the exact nature of the injury that is the subject of the present lawsuit.

The Freemans' petition alleges:

William R. Freeman's doctors continually prescribed [Halcion] for W.R. Freeman for over two and one half years.... While under the influence of the drug Halcion, and without any awareness that Halcion was causing the problems, W.R. Freeman experienced memory loss, psychotic episodes, paranoia, and other bizarre and un-

predictable behavior. On April 13, 1987, after he had been taking the 1.0 mg dose of Halcion for approximately one month, and as a proximate cause of the effects of Halcion, W.R. Freeman killed his best friend by shooting him in the head. W.R. Freeman did not fully understand nor recall the events surrounding the killing. Thus, each time he was asked about the killing his description of the events differed. Moreover, every explanation of the events clearly conflicted with the actual scene of the killing.... For [W.R. Freeman] to make four or five different statements, and each of those statements impossible in light of the crime scene, is inexplicable had Freeman not been delusional and psychotic.

The petition further alleges that Halcion's effect on Freeman arose gradually, over several months, and created a condition of unsound mind. The petition states that Freeman suffered memory loss, depression, headaches, paranoia, drug-induced schizophrenia, and psychotic episodes. The petition asserts that Freeman's "mental state was the result of Halcion, which he was still taking in the .5 mg dose right up through his trial." The petition also states that Freeman twice attempted suicide while taking Halcion. The petition further alleges that Halcion was responsible for his mental condition, and such condition did not cease until he was "taken off the drug upon his final commitment to the Texas Department of Corrections."

■ Upjohn did not specially except to the Freemans' petition. When there are no special exceptions, a petition will be construed liberally in favor of the pleader. *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex. 1982). Every fact will be supplied that can be reasonably inferred from what is specifically stated. *Roark,* 633 S.W.2d at 809. The petition alleges that Freeman's use of Halcion caused his mental condition that resulted in memory loss, psychosis, depression, headaches, suicide attempts, murder, and difficulty in understanding the events surrounding the shooting. The petition alludes to the effects of dosage and time on the severity of Freeman's mental condition. The petition concludes that Freeman's daily use of Hal-

cion caused his debilitated mental state. The Freemans adduced evidence at trial to support Freeman's alleged mental condition.

Without a special exception to the petition's factual recitation of the alleged injuries, this Court cannot hold, as a matter of law, that the petition alleges two specific, identifiable injuries occurring outside the statutory period that constitute the basis or subject of the present lawsuit. On the contrary, the petition alleges that Freeman continued to use Halcion unaware of its effect on him and that his use of Halcion resulted in a litany of tragic consequences. The factual allegations assert a continuing injury resulting from the continued use of Halcion.

The petition states the nature of the alleged injury in sufficient detail to give Upjohn fair notice of the nature of the claimed tort. Because Upjohn did not specially except to the Freemans' pleading, Upjohn waived any complaint about its sufficiency. See TEX.R.CIV.P. 90. The Freemans' pleading of a continuing injury satisfies our liberal rule of pleading. Accordingly, we consider the continuing-tort rule on appeal. Because the Freemans pleaded sufficient facts to put the continuing-tort rule in issue, the Freemans' petition does not affirmatively show, on its face, that Freeman's cause of action accrued more than two years before suit was filed.

▬ Next, Upjohn contends that Freeman's awareness of the effects of Halcion before the murder precludes application of the continuing-tort rule. If Freeman had discovered his injury and its cause, the rationale for the continuing-tort rule would no longer apply, and the statute would commence to run at that point. See Atha v. Polsky, 667 S.W.2d 307, 310 n. 10 (Tex. App.—Austin 1984, writ ref'd n.r.e.); Tectonic, 812 S.W.2d at 653; Jim M. Perdue, The Law of Texas Medical Malpractice: Limitations, 11 HOUS.L.REV. 825, 834 (1974). At trial, Phil Altman testified that Freeman

knew several days before the murder that he was addicted to Halcion. Altman testified that when he told Freeman to stop drinking because he had a drinking problem, Freeman responded that alcohol was not causing his problems but that he was addicted to Halcion. Testimony that Freeman knew of an addiction to Halcion does not conclusively prove that he understood that Halcion was affecting his mental condition. Moreover, the Freemans' petition alleges, and the evidence adduced at trial supports, Freeman's ignorance of Halcion's effect on him.[2] Consequently, Upjohn did not conclusively establish, as a matter of law, that Freeman had discovered the nature of his injury and its cause outside the statutory period.

Upjohn did not demonstrate that the record conclusively proves, as a matter of law, that Freeman's cause of action accrued, and the limitations period commenced, two years before the Freemans brought suit. See Adler, 594 S.W.2d at 156; see also Dick Poe Motors, Inc. v. Dickey, 802 S.W.2d 739, 744–45 (Tex.App.—El Paso 1990, writ denied); Intermedics, 683 S.W.2d at 845. Consequently, the trial court did not err in denying Upjohn's motion for a directed verdict on the basis of limitations.[3] We overrule point of error one.

## ACTUAL AND EXEMPLARY DAMAGES

In point of error two, Upjohn contends that the jury's awards of actual and exemplary damages to the Family are not sustainable as a matter of law. Specifically, Upjohn asserts that the Family's recovery for loss of consortium cannot stand because the jury found that Freeman suffered no injury. Upjohn further argues that an award of exemplary damages cannot stand absent actual damages. The Family contends that Upjohn erroneously equates "zero damages" for Freeman with "no injury." The Family explains that an award of zero damages is not

---

2. Martha Freeman testified that, about a year after the conviction, they learned that Halcion could have been responsible for Freeman's mental condition because of a television program about the side effects of Halcion.

3. If the defendant does not establish limitations as a matter of law, the defendant can seek jury findings on the affirmative defense. Intermedics, 683 S.W.2d at 845. The trial court denied Upjohn's request to submit a statute-of-limitations question to the jury, which is the subject of appellant's third point of error.

automatically linked to the issue of whether an injury was present. The Family concludes that a jury may properly find that an injury occurred but still refuse to compensate the injured plaintiff.

### Applicable Law

■ In a personal-injury case, the plaintiff typically alleges that the defendant's conduct caused an event and that this event caused the plaintiff to suffer injuries for which compensation should be paid. Thus, at trial the plaintiff must establish two causal nexuses to be entitled to recovery:

1) A causal nexus between the defendant's conduct and the event sued upon; and

2) A causal nexus between the event sued upon and the plaintiff's injury.

*Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984). The causal nexus between the defendant's conduct and the event sued upon relates to the liability portion of a plaintiff's cause of action. Liability means legal responsibility for the event upon which the plaintiff bases suit. *Morgan*, 675 S.W.2d at 732.

■ Whether the event sued upon caused any injury to the plaintiff is entirely separate from the liability or legal responsibility issue. The causal nexus between the event sued upon and the plaintiff's injuries is typically referable to the damages portion of the plaintiff's cause of action. *Morgan*, 675 S.W.2d at 732 (citing 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.03 (1982)). However, with broad-form submissions, the trial court can include the issue of a causal nexus between occurrence and injury in one general jury question.[4] *See* TEX. R.CIV.P. 277; 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.03 (1991).

■ The plaintiff may recover damages only for those injuries caused by the event made the basis of the suit. *Morgan*, 675 S.W.2d at 732. Therefore, if the jury has not been asked to consider the causal nexus between the event sued upon and the plaintiff's injuries in a broad-form submission, then this issue will be subsumed in the damages question.[5] Consequently, "proof" of damages will consist of two parts:

1) Proof that the event sued upon *caused* the plaintiff's injuries; and

2) Evidence about the *amount* of damages the plaintiff may recover.

*Morgan*, 675 S.W.2d at 732. The plaintiff must prove both of these elements by competent evidence. *Morgan*, 675 S.W.2d at 732.

### Application of Law to Facts

■ In their petition, the Freemans allege both negligence and products liability. In a negligence action, the plaintiff shows liability by proving that the defendant's negligent conduct was a proximate cause of the event sued upon. In a products-liability action in which a marketing defect is alleged, liability is established by proving that a product was placed in the stream of commerce containing inadequate warnings or directions which were a producing cause of the event made the basis of suit.[6]

With respect to the negligence action, the trial court charged the jury, and the jury answered:

1. What percentage, if any, of the negligence, if any, that you find proximately caused the occurrence in question do you find should be attributed to each of the parties, if any?

---

4. This may be accomplished by using the term *injury* or terms *occurrence or injury*. For example, the trial court may charge the jury: "Did the negligence, if any, of the Defendant proximately cause the *injury or occurrence in question?* Answer Yes or No."

5. If the liability issue asks only whether the defendant caused the *occurrence in question,* then an affirmative jury response to that issue indicates that the defendant caused the occurrence in question and nothing more.

6. *See Keene Corp. v. Gardner,* 837 S.W.2d 224, 228 (Tex.App.—Dallas 1992, writ denied); *Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 377 (Tex. 1985) (op. on mot. for reh'g); 59 TEX.JUR.3d *Products Liability* § 22 (1988). In a strict products liability case, the nexus between the defendant's conduct and the occurrence in question is not necessarily required. *Duncan v. Cessna Aircraft Corp.,* 665 S.W.2d 414, 428 (Tex.1984). However, the plaintiff is not relieved of his burden to prove that the defective product caused his injury.

Answer by stating a percentage, if any, opposite each of the parties listed below. The total should be 100 percent or zero.

ANSWER

a) Plaintiff William R. Freeman 50%
b) Defendants The Upjohn Company 20%
 Dr. Aaron Landy 30%
 TOTAL 100%

Therefore, the trial court asked the jury to rule upon the causal nexus between Upjohn's conduct and the occurrence in question. However, the trial court did not instruct the jury on the meaning of *occurrence in question*. The occurrence in question is defined as the legal basis of the lawsuit. Here, the event made the basis of the suit was Freeman's ingestion of Halcion.[7] *See Morgan*, 675 S.W.2d at 732. The jury answered that Freeman was fifty percent responsible for taking Halcion; Upjohn twenty percent responsible; and Dr. Landy thirty percent responsible. Consequently, the jury found that Upjohn may be held liable for its negligence with respect to Freeman's ingestion of Halcion.

With respect to the products-liability action, the trial court gave the following charge, and the jury responded:

2. Was there a defect in the marketing of Halcion at the time it left the possession of The Upjohn Company that was a producing cause of the occurrence in question?

Answer "Yes" or "No."

ANSWER: Yes.

Therefore, the trial court asked the jury to rule upon the causal nexus between Upjohn's marketing of Halcion and the occurrence in question—Freeman's ingestion of Halcion. *See Morgan*, 675 S.W.2d at 732. The jury answered that Upjohn's marketing of Halcion was a producing cause of Freeman's decision to take the drug in the manner that he did. Therefore, the jury found Upjohn liable for Freeman's use of its defective product.

The trial court properly submitted the issues on proximate and producing cause. *See* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 4.01B (1991); 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.01 (1991). By using the term *occurrence in question*, the proximate and producing cause issues ask about Upjohn's liability for the basis of the suit, Freeman's ingestion of Halcion.

By answering questions one and two positively, the jury found that Upjohn negligently dispensed Halcion with a marketing defect and that as a result of this conduct, Freeman took Halcion in the manner that he did. Upjohn's negligence was a proximate cause, and Upjohn's marketing of Halcion was a producing cause, of Freeman's use of the

---

7. The dissent would have this Court ignore the plain meaning of the term "occurrence in question" (the event that enables a plaintiff to bring suit against a defendant) and substitute one of the myriad of injuries alleged in the Freemans' petition. Typically, the event that enables a plaintiff to bring suit against a particular defendant is an accident or collision from which injury occurs. This case, however, does not involve an accident. It involves a continuing tort: a plaintiff's prolonged use of an injury-producing medication.

The pleadings and proof at trial sought to establish that (1) Upjohn failed to adequately warn consumers about the dangers of (i) prolonged use and (ii) excessive dosage and (2) due to this failure, Freeman took Halcion in an excessive amount for an extended amount of time, thereby causing him a host of injuries. Therefore, the legal basis of the suit is Upjohn's negligent sale of Halcion in a defective condition, which became actionable when Freeman used Halcion in a manner that caused him injury.

Contrary to the dissent's assertion, this Court has read the jury charge in the most ordinary manner. If this case involved an automobile accident, one would not suggest that the "occurrence in question" really meant the plaintiff's resulting injuries. The Freemans' requested damages issue, though not submitted or affirmatively ruled upon by the trial court, stated: "What sum of money, if paid now in cash, would fairly and reasonably compensate William Freeman for his injuries, if any, that *resulted from the occurrence in question?*" The Freemans' requested charge instructed the jury: "Do not include any amount for any condition not resulting from *the use of Halcion* by William Freeman." The record shows that both parties, when submitting their proposed jury charge to the court, saw a difference between occurrence in question and injury. And, the trial court submitted, without objection, a charge that asked the first necessary causal nexus between conduct and occurrence (the liability question) and then, asked the jury about the nexus between occurrence and injury (the damages question).

drug. In short, the jury decided the liability issues in favor of Freeman. However, neither of these questions asks whether Upjohn's actions were the cause of Freeman's injuries.

The liability questions refer only to the occurrence in question—the taking of Halcion—and do not refer to any alleged injury resulting from that event. Therefore, the Freemans still had to ask the jury whether the "taking of Halcion" caused Freeman any injury. *See Morgan*, 675 S.W.2d at 732. The trial court asked, and the jury responded:

> If you have answered any part of Issue No. 1 with any amount other than zero, or if you have answered "Yes" to Issue No. 2, please answer Issue No. 3; otherwise, do not answer it.

> 3. What sum of money, if any, if paid now in cash do you find would fairly and reasonably compensate Plaintiff William R. Freeman for the damages proximately caused by the actions of the Defendant?

> Answer in dollars and cents, if any, as to each of the following:

> ANSWER

> a) Loss of enjoyment of life — 0
> b) Emotional distress in the past — 0
> c) Emotional distress in the future — 0

The jury answered "zero" to each subpart of this damages question. Question nos. 1 and 2 do not establish that Upjohn's actions caused injury to Freeman. Consequently, question no. 3 is the only issue that can be read as asking the jury whether there is a causal link between the event sued upon and injury to Freeman.[8] *See* 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.01; 80.02B (1991). Therefore, the jury's answer to this damages issue implicates part one of the "proof" of damages: whether the event sued upon caused the plaintiff's injuries. *See Morgan*, 675 S.W.2d at 732. Accordingly, the zero award constitutes a nega-

tive response to the question: "Did the taking of Halcion cause Freeman any injury?"

The Family contends that the jury's "zero" answer only implicates the second part of the plaintiff's burden regarding the *amount* of damages the plaintiff should recover. The Family explains that the jury simply chose not to compensate Freeman for his injuries. If the liability questions had used the terms *injury* or *occurrence or injury*, then the answer of zero damages would not mean that the jury found no causation between the ingestion of Halcion and Freeman's alleged injuries. The answer of zero damages could mean, as argued, that the jury chose not to award Freeman any amount of money for his damages proximately caused by using Halcion.

We agree that with respect to a loss-of-consortium claim, the Family need only secure jury findings of the *existence* of damages caused by Upjohn's negligence or its defective product. The Family was not required to establish a certain *amount* of damages owed to Freeman. However, the Family did not establish a causal nexus between Upjohn's conduct or product and the existence of an injury to Freeman. *See Morgan*, 675 S.W.2d at 732.

In a post-submission letter brief, the Family asserts:

> The charge submitted by the trial court asked if there was a "defect in the marketing of Halcion ... that was a producing cause of the occurrence in question." The jury answered "yes". The official commentary to section 4.01 of the Pattern Jury Charges indicates that the committee has continued to use "occurrence" rather than "injury", although "injury" may be used in products liability cases. Upjohn did not object to the use of "occurrence" rather than "injury" in this jury question. Thus, the finding that this marketing defect was a producing cause of the "occurrence in question" is tantamount to a finding that it was a producing cause of "injury" to William Freeman.

---

**8.** The charge asked the jury what amount of money, if any, would compensate Freeman for his damages proximately caused by Upjohn's actions. *Damages* has an ordinary meaning that encompasses every loss or diminution occasioned by the fault of another. *Woodyard v. Hunt*, 695 S.W.2d 730, 732 (Tex.App.—Houston [1st Dist.] 1985, no writ).

A jury finding that a marketing defect is the producing cause of the occurrence in question is not tantamount to a finding that the marketing defect is the producing cause of the alleged injury. The use of *injury* is recommended in strict products-liability cases where a plaintiff is not required to first establish a nexus between the defendant's conduct and the occurrence in question. *See Duncan v. Cessna Aircraft Corp.*, 665 S.W.2d 414, 428 (Tex.1984); 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.01 (1991). However, even in strict products-liability cases, it remains the plaintiff's burden to establish a causal nexus between the defective product and the alleged injury.[9]

A plaintiff may recover damages only for injury caused by the defective product. *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 792–93 (Tex.1967); RESTATEMENT (SECOND) OF TORTS § 402A (1965). Therefore, by using the term *injury* in a broad-form submission, the plaintiff is asking the jury to consider the appropriate causation issue. *Injury* and *occurrence in question* are not synonymous, interchangeable terms that have the same meaning regardless of their use in submitting an issue to the jury. There is no cause of action for strict liability in tort until there is actual damage to the plaintiff resulting from the defective product. *See Cherry*, 715 S.W.2d at 745. Consequently, the Family cannot be relieved of their burden to submit a jury question on the appropriate causation issue in a strict products-liability claim.

Next, the Family argues that the jury clearly found that the ingestion of Halcion caused Freeman's deranged mental condition because the jury awarded Freeman's wife and children damages for loss of consortium. The Family suggests that the first part of the plaintiff's burden to prove injury to Freeman can be found in the jury's positive answer to the damages issue for the wife and children.[10] However, question no. 4 asks only if the wife and children suffered damages as a result of Upjohn's actions. The jury must find an injury to the family member *before* determining the consortium damage issue. *Reagan*, 804 S.W.2d at 467–68. Question no. 4 does not ask the threshold issue of whether Freeman suffered a serious, permanent, and disabling injury as a result of Upjohn's negligence or its defective product. *Reagan*, 804 S.W.2d at 467; *Whittlesey*, 572 S.W.2d at 667. Whether the family members suffered any loss of consortium is immaterial *until* the plaintiffs establish that the defendant's actions or product caused injury to the impaired family member.

The Family concedes that a family member's claim for loss of consortium is derivative of the impaired family member's tort action. The Family concedes that a claimant must establish liability on the defendant tortfeasor and show resulting harm to the impaired family member and family relationship to justify a recovery. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738–39 (Tex.1980).

The Family argues, however, that it is ludicrous to suggest that Freeman was not injured as a result of Upjohn's conduct. The Family asserts that the evidence of injury to

---

9. Under a theory of strict liability in tort, the plaintiff bears the burden of proving (1) the defective and unreasonably dangerous condition of the defendant's product and (2) a causal connection between such condition and the plaintiff's injuries or damages. *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex.1978) (citing James B. Sales and Jim M. Perdue, *The Law of Strict Tort Liability in Texas*, 14 HOUS.L.REV. 1, 7–8 (1976–77)); *see also* MATTHEW J. CANAVAN, AMERICAN LAW OF PRODUCTS LIABILITY 3d, § 4:1 at 11–12 (1987).

10. With respect to loss of consortium, the trial court charged the jury: 4. What sum of money, if any, if paid now in cash do you find would fairly and reasonably compensate Plaintiffs for the damages proximately caused by the actions of the Defendant?

 a) Martha Freeman, Individually
 Loss of Consortium
 Loss of Support
 b) Martha Freeman, as Next Friend and Guardian of Sean Perry Freeman
 Loss of Consortium
 Loss of Support
 c) William Lance Freeman
 Loss of Support
 d) Lori Yvonne Freeman
 Loss of Consortium
 Loss of Support
 e) Leah Suzanne Freeman
 Loss of Consortium
 Loss of Support

Freeman and his family cannot be ignored. Therefore, argues the Family, any omitted elements to the loss-of-consortium claims must be deemed found by the court in such a manner to support the judgment. *See* TEX. R.CIV.P. 279.

The Family asserts that they are relieved of their burden to secure the threshold finding of a serious, permanent, and disabling injury to Freeman because Upjohn failed to object to its omission.[11] However, the Family's cause of action for loss of consortium is not independent of Freeman's personal-injury claim. To find this "omitted" element in favor of the Family, this Court would have to disregard the jury's negative answer to Freeman's damages question. Injury to the impaired family member is a *prerequisite* to the derivative claim of loss of consortium. *Reagan*, 804 S.W.2d at 467–68; *Whittlesey*, 572 S.W.2d at 667. Because the jury answered that the taking of Halcion was not the cause of any injury to Freeman, we cannot hold this "omitted" threshold issue deemed as a matter of law.

*Conclusion*

 Loss of spousal and parental consortium are derivative of the family member's claim for personal injury. *Reagan*, 804 S.W.2d at 467. To recover, the spouse or child must prove that the defendant is liable for the personal injuries suffered by her spouse or parent. *Reagan*, 804 S.W.2d at 467 (citing *Reed Tool Co.*, 610 S.W.2d at 739). The plaintiffs must not only establish the existence of an injury to the impaired family member, but also establish a causal nexus between that injury and the defendant's conduct or its defective product. *Morgan*, 675 S.W.2d at 732; *see Reagan*, 804 S.W.2d at 467; *Whittlesey*, 572 S.W.2d at 667.

Consequently, the Family could have shown a legally compensable injury by: (i) establishing a causal nexus between the event sued upon (the taking of Halcion) and Freeman's injury in a broad-form submission of the negligence and products-liability questions, (ii) obtaining an affirmative finding of damages to Freeman, or (iii) securing a separate "threshold finding" of an injury to Freeman caused by Upjohn's conduct.[12] *Reagan*, 804 S.W.2d at 468; *Whittlesey*, 572 S.W.2d at 668. The Family did not obtain a single jury finding that Upjohn's actions or product caused injury to Freeman.

In response to the only jury question that raised the issue of a legally compensable injury to Freeman, the jury answered that the ingestion of Halcion did not *cause* Freeman's mental condition, his subsequent actions, or the consequences that followed. The jury's refusal to find that Freeman suf-

---

**11.** The record, however, indicates that Upjohn objected to the loss-of-consortium issue based on no evidence of a permanent, physical injury to Freeman. The Family urges that the no-evidence objection is insufficient to alert the trial court's attention to the need to submit the threshold issue to the jury. Even if Upjohn's objection was insufficient, Upjohn preserved error by requesting the trial court to inquire of the jury whether the physical injury to Freeman was serious, permanent, and disabling. *See State Dept. of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 239 (Tex.1992) (op. on mot. for reh'g) (citing *Morris v. Holt*, 714 S.W.2d 311 (Tex.1986)).

Specifically, Upjohn requested the trial court to include the following question in the charge: "Do you find, by a preponderance of the evidence, that the physical injury to William Freeman was a serious, permanent, and disabling injury?" The trial court's refusal to ask the question constituted a clear refusal to submit an essential element necessary to a claim for loss of consortium. On appeal, the Family argues that the requested issue was not substantially correct because *physical* injury to the impaired family member is not a prerequisite to recovery for loss of consortium. Since this case was tried and appealed, the Texas Supreme Court, in *Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288 (Tex.1994), has clarified the issue of whether loss of spousal consortium can be recovered absent proof of physical injury. The supreme court held that damages for loss of spousal and parental consortium are not recoverable absent proof of a serious, permanent, and disabling physical injury. 881 S.W.2d at 294. Accordingly, Upjohn submitted a substantially correct question. Because Upjohn requested a question that directed the court's attention to the very element of the loss-of-consortium claims missing from the court's charge, this "omitted" element cannot be deemed admitted under rule 279 of the rules of civil procedure. TEX.R.CIV.P. 279.

**12.** The Family concedes that our supreme court has formulated a threshold finding *to be made by the fact finder*, with respect to the loss of consortium, that the injury to the family member be *serious, permanent,* and *disabling*. *Reagan*, 804 S.W.2d at 468.

fered an injury because of Upjohn's negligence or product precludes the Family's causes of action for loss of consortium. The award of damages for loss of consortium cannot stand as a matter of law.

 As a general rule, the right to recover exemplary damages depends on a finding that the plaintiff suffered actual damages as a result of an underlying tort. *Nabours v. Longview Sav. & Loan Ass'n,* 700 S.W.2d 901, 903 (Tex.1985); *Doubleday & Co. v. Rogers,* 674 S.W.2d 751, 753–54 (Tex. 1984). Punitive damages are recoverable only after proof of a distinct, wilful tort. *Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 571 (Tex.1981); *City Prods. Corp. v. Berman,* 610 S.W.2d 446, 450 (Tex.1980). Because actual damage is a necessary element of the underlying tort upon which the punitive damages are to be based, exemplary damages are contingent on an actual damage award. *Nabours,* 700 S.W.2d at 903. Accordingly, exemplary damages are not allowed unless predicated on actual damages. *General Ins. Corp. v. Harris,* 327 S.W.2d 651, 656 (Tex.Civ.App.—Dallas 1959, no writ). Because the jury's award of actual damages cannot stand, there is no basis for an award of exemplary damages. We sustain Upjohn's second point of error. Due to our disposition of point of error two, we do not reach Upjohn's remaining points of error. *See* Tex.R.App.P. 90(a).

## THE FREEMANS' CROSS-POINTS OF ERROR

In cross-point of error one, the Family contends that the trial court erred in refusing to enter judgment on the jury's award for loss of support to Martha, Sean, Leah, and Lance. In its motion for judgment n.o.v. and on appeal, Upjohn contends that loss-of-support damages are not recoverable in a personal-injury claim and that the evidence is legally insufficient to support the jury's award.

 Texas law recognizes the recovery of loss-of-support damages in wrongful-death actions. *See Moore v. Lillebo,* 722 S.W.2d 683, 686–88 (Tex.1986). Loss of support is an element of pecuniary damages which compensates a family member for damages resulting from lost economic benefits. *See Suber v. Ohio Medical Prods., Inc.,* 811 S.W.2d 646, 657 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (en banc) (Ellis, J., dissenting); 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 81.02 (1990). A family member's claim for loss of economic support is duplicative of the decedent's claim for loss of future earning capacity. *Suber,* 811 S.W.2d at 657. Therefore, a decedent's recovery for loss of future earning capacity bars the beneficiaries' suit for loss-of-support damages. *Suber,* 811 S.W.2d at 657.

 In a personal-injury action, no Texas case has recognized the recovery of loss-of-support damages for the injured member's family. Loss of support represents an element of damages created by the Texas Wrongful Death Act. *See Moore,* 722 S.W.2d at 687; Tex.Civ.Prac. & Rem.Code Ann. § 71.001–.011 (Vernon 1986). In a personal-injury action, the family member who is injured but not killed seeks recovery for his loss of future earning capacity rather than the family pursuing damages for loss of economic support.[13] *See* 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.02, 80.03, 80.14, 81.02 (1990); *cf. Bennight v. Western Auto Supply Co.,* 670 S.W.2d 373, 379 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Consequently, the trial court did not err in entering a take-nothing judgment n.o.v. on the claim for loss-of-support damages. We overrule the Family's cross-point of error one. Due to the disposition of this appeal, we need not address the Family's second cross-point. *See* Tex.R.App.P. 90(a).

We reverse the trial court's judgment and render a take-nothing judgment in favor of Upjohn.

McGARRY, Justice, concurring and dissenting.

Although I did not serve on the panel in this case, I respectfully dissent. Tex.

---

**13.** Upjohn moved for a directed verdict on Freeman's claim for loss of future earning capacity on the basis of legally insufficient evidence. The Freemans do not appeal the trial court's grant of an instructed verdict on Freeman's claim for lost economic benefit.

R.App.P. 90(e); *O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 96 (Tex.1992).

The jury in this case found that Upjohn's negligence was a proximate cause of the "occurrence in question." The jury also found that Upjohn's conduct proximately caused the Freeman family to lose the companionship and emotional support of William R. Freeman. The jury chose not to compensate Mr. Freeman, who is a convicted murderer serving a life sentence in the state penitentiary.

The jury charge in this case does not define the term "occurrence in question." Presumably, the jury had an idea about what it meant when it answered the question in the affirmative. The trial judge, who submitted the charge and entered judgment on the verdict, must also be presumed to have had an idea about what the verdict meant. However, this Court has taken it upon itself to impose a definition, after the fact, that effectively frustrates the clear intent of both the jury and the trial court.

The Court defines the "occurrence" as Mr. Freeman's ingestion of Halcion. Maj. op. at 546, 547. The only support offered for this definition is a legal citation to *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex.1984). The Court thus appears to treat the definition as an abstract question of law that must be answered by reference to case authority and legal commentary. Such an analysis, I believe, is misguided from its inception.

*Morgan* correctly observed that the typical personal-injury case requires proof of two causal nexuses: between the defendant's conduct and the event sued upon; and between the event sued upon and the plaintiff's injury. *Morgan*, 675 S.W.2d at 732. *Morgan* illustrated this distinction by reference to the old pattern jury charge, which asked two questions: whether the defendant's conduct proximately caused the occurrence in question; and the amount of money that would compensate for injuries, if any, resulting from the occurrence in question. *Morgan*, 675 S.W.2d at 732. However, neither of these authorities tells us what the "event sued upon" or the "occurrence in question" refers to in any given case.

The Court also cites the current pattern jury charge as authority for the proposition that both causal nexuses identified in *Morgan* can be combined into a single broad form question, but suggests in a footnote that this can only be accomplished by using the term *injury* or the phrase *occurrence or injury*.[1] Maj. op. at 545, n. 3 (*citing* 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 80.03 (1991)). However, even the pattern jury charge does not slavishly insist on a question using the term "injury" in all cases.

To the contrary, the current pattern jury charge makes it quite clear that a choice between "occurrence" and "injury" is important *only* when there is evidence of the plaintiff's negligence that is "injury-causing" or "injury-enhancing" but not "occurrence-causing."[2] 1 STATE BAR OF TEXAS, PATTERN JURY CHARGE PJC § 4.01, pp. 4-6, 4-7 (1987); 3 STATE BAR OF TEXAS, PATTERN JURY CHARGE PJC § 71.01, p. 71-3 (1990). Absent such evidence, the Pattern Jury Charge Committee acknowledged that there is no real distinction between occurrence-causing and injury-causing liability, and that both are acceptable modes of submission. *See* Russell H. McMains, *Contribution and Indemnity Problems in Texas Multi–Party Litigation*, 17 ST. MARY'S L.J. 653, 676 (1986). That is why the pattern jury charge offers the alternatives of "[occurrence] [injury] [occurrence or injury]" in its form submission. It is not because "injury" is a magic word under *Morgan*.

---

1. Under the Court's reasoning, using *occurrence or injury* in the disjunctive ought to be inadequate as well: the jury may have found causation of an occurrence without causation of injury.

2. Examples given include the plaintiff's preaccident negligence, such as carrying gasoline in an unprotected container that explodes in a subsequent crash, and the plaintiff's postaccident negligence, such as not following doctor's orders during recovery, resulting in an aggravation of injuries sustained in a prior accident. The pattern jury charge also refers to the plaintiff's misuse of a defective product or the failure to mitigate or avoid damages, citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 428 (Tex.1984).

Even under the Court's interpretation of the jury charge and verdict, Mr. Freeman was responsible for causing fifty percent of the "occurrence." There appears to be no evidence that Mr. Freeman caused an injury without causing an "occurrence." Thus, according to the commentary in the pattern jury charge, the decision to use either "occurrence" or "injury" in the jury charge is entirely inconsequential under the facts of this case.

More important is the observation that neither the supreme court's opinion in *Morgan* nor the pattern jury charge and its accompanying commentary offer any guidance on what constitutes the "occurrence" in any given case. *Morgan* appears to equate "occurrence in question" with "the event sued upon." *Morgan*, 675 S.W.2d at 732. The pattern jury charge seems to treat the "occurrence in question" as meaning an accident, or in an appropriate case, a collision. 1 STATE BAR OF TEXAS, PATTERN JURY CHARGE PJC § 4.01, pp. 4–4, 4–5 (1987). However, it is clear that its meaning will depend on the facts of each case.

In this case, the Court has rather arbitrarily decided that "the event sued upon," *i.e.*, the "occurrence," was the mere ingestion of Halcion by Mr. Freeman. This makes little sense. The mere ingestion of Halcion by Mr. Freeman could not be the event sued upon because no cause of action accrued at the time of that event. This interpretation of the charge also makes the jury's verdict unintelligible: there is no pleading or evidence that Mr. Freeman was negligent merely by ingesting Halcion. To the contrary, he was merely taking medication that had been prescribed to him by his doctor.

The event sued upon in this case, *i.e.*, the "occurrence in question," could easily refer to Mr. Freeman's shooting Donnie Hazelwood, or at the very least, to the onset of Mr. Freeman's psychiatric problems, including memory loss, psychosis, depression, headaches and suicidal tendencies. Certainly, the plaintiffs' petition clearly focuses on these

"psychiatric side effects" as the basis of their suit. The important point is that the meaning of "occurrence in question" as it is used in the jury charge is unclear, and the Court has failed to apply the proper analysis in determining its meaning.

There are two cardinal rules for determining the meaning of a jury finding.[3] First, the reviewing court must interpret the finding so as to reconcile it with the jury's verdict as a whole, if reasonably possible in light of the pleadings and evidence, and the manner of submission. *Luna v. Southern Pac. Transp. Co.*, 724 S.W.2d 383, 384 (Tex.1987); *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980); *Martin v. Gulf Ins. Group*, 788 S.W.2d 376, 378 (Tex.App.—Dallas 1989, writ ref'd n.r.e.); *Archer v. Wood*, 771 S.W.2d 631, 631 (Tex.App.—Dallas 1989, no writ). Second, the finding must be interpreted to uphold the judgment. *Jackson v. United States Fidelity & Guar. Co.*, 689 S.W.2d 408, 412 (Tex.1985). The Court's opinion in this case violates both rules.

For example, the Court's interpretation of the jury's verdict to mean that Mr. Freeman suffered no injury is inconsistent with the jury's finding that Upjohn caused the Freeman family to lose Mr. Freeman's companionship and emotional support. The Court's opinion dismisses this conflict by arguing that the jury must find *injury* to Mr. Freeman *before* determining loss of consortium, but this argument is circular: it begs the factual question of whether the jury interpreted "occurrence in question" to mean Mr. Freeman's injury; it also begs the legal question of whether there is any evidence in this case to justify distinguishing between "occurrence" and "injury" in the charge. The Court must interpret "occurrence" to mean "injury" in this case because the evidence permits it and it is necessary to harmonize the jury's findings.

At the very least, if "occurrence" could mean the onset of psychosis, or the consequent shooting and imprisonment, then the omission of the word "injury" from the

---

3. These rules apply when the meaning of a jury finding is unclear. If a word or phrase in a finding has a clear, ordinary meaning, then that is what the jury will be presumed to have meant.

*See Northwestern Nat'l. Cas. Co. v. McCoslin*, 838 S.W.2d 715, 718 (Tex.App.—Waco 1992, no writ).

charge most likely reflects a conclusion by the trial court that the causal nexus between such an occurrence and Mr. Freeman's injury was undisputed and should not be separately submitted. The omitted "injury" issue would be deemed found by the court in support of the judgment. TEX.R.CIV.P. 279. Alternatively, "occurrence" should be interpreted to mean or include a finding of injury because that is necessary to support the judgment. *Jackson*, 689 S.W.2d at 412.

I would uphold the jury's award of damages for loss of consortium because the jury found that the defendants caused Mr. Freeman's injuries, and because Freeman's psychosis and resulting life imprisonment are serious, permanent and disabling physical injuries as a matter of law. *See Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288 (Tex.1994); *see also Reagan v. Vaughn*, 804 S.W.2d 463, 468 (Tex.1990). I would uphold the award of punitive damages because they are properly predicated on this award of actual damages.

I concur in the Court's conclusion that the trial court properly refused to enter judgment on the jury's award for loss of support to Martha, Sean and Lance Freeman. The family members' loss of support claim is subsumed within Mr. Freeman's claim for loss of future earning capacity.[4] *See Suber v. Ohio Medical Prods., Inc.*, 811 S.W.2d 646, 657 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (Ellis, J. dissenting). The plaintiffs' failure to challenge the trial court's directed verdict on Mr. Freeman's claim precludes an award for loss of support.[5]

---

[4.] Judge Ellis' dissent did not say that the two claims are "duplicative," however, because they are not. There are many instances in which a spouse's future earning capacity would not be used solely to provide support for the family.

[5.] I join the Third Court of Appeals in questioning why loss of support claims are limited to wrongful death actions. *See Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373, 379 (Tex.App.— Austin 1984, writ ref'd n.r.e.). If loss of support is "duplicative" of loss of future earning capacity, as the majority suggests, then the trial court should be able to submit it either way. If the two claims are merely overlapping but not duplicative, as I contend, the plaintiffs and the trial court should be free to submit the narrower loss of support claim, rather than the broader earning capacity claim, in a personal injury action.