# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-25-00202-CV

---

**Gerardo Saldivar Mendo and Marcelina Castro, Appellants**

**v.**

**Jeannine Flournoy Brown, Individually and as Trustee of J&R Flournoy Trust, Appellee**

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-23-003478, THE HONORABLE LAURIE EISERLOH, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

In this executory-contracts dispute, Appellants Gerardo Saldivar Mendo and Marcelina Castro appeal the trial court's order granting summary judgment in favor of Appellee Jeannine Flournoy Brown, Individually and as Trustee of J&R Flournoy Trust. Appellants have not challenged every ground presented in the summary-judgment motion with regard to their claim under section 5.081 of the Property Code. The remainder of their claims are time-barred as a matter of law. Accordingly, we affirm.

### BACKGROUND

Appellants are a married couple who entered into a Residential Lease/Purchase Agreement on a house at 1305 Astor Place in Austin. That contract was signed in 1998 by Appellants and by Brown, as agent for the owner, Clarence Flournoy. Flournoy died, and J&R Flournoy Trust was formed in 1999 to hold the property in trust for the benefit of his heirs,

including Brown, who became the trustee. In 2000, J&R Flournoy Trust entered into a Residential Lease/Purchase Agreement with Mendo on another property, 1302 Astor Place; Mendo and Brown signed that contract. The parties do not dispute that these agreements were executory contracts. An executory contract for the conveyance of real property, also known as a contract for deed, is a method for effectuating a real estate transaction that, unlike a traditional mortgage, "allows the seller to retain title to the property until the purchaser has paid for the property in full." *See Flores v. Millennium Ints., Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005); *see Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App.—Austin 2012, pet. denied) ("A contract for deed differs from a conventional contract for sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain (the 'closing date')."); *see also* Tex. Prop. Code §§ 5.061–.085 (governing executory contracts for conveyance); *Orozco v. Hoskins*, No. 03-16-00762-CV, 2018 WL 699330, at *1 (Tex. App.—Austin Feb. 1, 2018, no pet.) (mem. op.) (summarizing legislative framework governing executory contracts).

During the terms of the initial agreements, Appellants allege that because they did not read, write, or speak English, they relied exclusively on Brown's representations as to the contents of the agreements. Appellants assert that Brown told them they had to pay the taxes and insurance for the properties, thereby misrepresenting the terms of the agreements, which contained no such requirements. The lease portion of the agreements provided that Appellants would have to pay only a security deposit and monthly rent. However, the purchase clauses provided an option to enter into a Contract for Deed at a set price. The purchase price for 1305 Astor was $47,000. Entering into a Contract for Deed was contingent on Appellants' having made nine consecutive monthly payments, and the lease specified that credit towards the purchase price would be given for the security deposit and "all timely consecutive rental

2

payments made under the Lease, as if the rental payments were payments under such Contract for Deed." The Contract for Deed further provided "Owner shall finance the property at a rate of 10% per annum with a 30 year amortization. Resident shall pay Owner an escrow each month for taxes and insurance." The term of that lease was ten months. The agreement for 1302 Astor was similar but specified a $69,000 purchase price and required twelve consecutive monthly payments before entering into a Contract for Deed. The term of the 1302 Astor lease was twelve months.

In January 2006, Appellants and Brown executed deeds of trust on both properties that conveyed the properties to Appellants. After accounting for principal paid on each property, the outstanding principal balance was $43,781.40 for 1305 Astor and $66,900.14 for 1302 Astor; these balances are reflected in the 2006 deeds of trust that Appellants signed. According to Appellants, Brown failed to credit them for payments for rent, insurance, and taxes that they contend should have been applied toward the principal amounts owed on each property, with the result that the prices listed for each property under the 2006 deeds were inflated. In their live pleading, Appellants contend that the entire $48,347.80 that they paid for principal, interest, and taxes under the initial agreement for 1305 Astor from the inception of the lease through January 2006 should have been applied against the $43,781.40 principal balance due under the deed of trust, such that Appellants "have been paying on a mortgage that has long been fulfilled." Similarly, they assert that the $48,445.06 they paid in principal, interest, and property taxes for 1302 Astor should have been applied against the $66,900.14 balance on the mortgage at the date of conversion, such that the balance on that mortgage in 2006 should have been $22,465.08. Appellants introduced as exhibits an accounting for each property. These accountings each show a credit towards the principal balance for the security deposits paid under the lease period and

3

reflect the amounts of principal, interest, and escrow for each payment made from the inception of the leases. The principal balances reflected on the deeds of trust executed in 2006 are consistent with the amounts owed in 2006 according to the accountings. Appellants do not explain how they arrived at the amounts they assert should have been credited against the principal balance as of 2006. But based on the accountings they cite as evidence of the amounts owed, their argument appears to be that all interest and escrow payments for insurance and property taxes should have been credited against the principal balance on the conversion from contracts for deed to deeds of trust.

Additionally, Appellants allege that from the inception of the Residential Lease/Purchase Agreements until the execution of the deeds of trust in 2006, Brown violated the Texas Property Code by failing to provide Appellants a Spanish version of the contracts, *see id.* § 5.068, failing to give them notice of taxes and provide a survey, *see id.* § 5.069, failing to advise them in writing that the contracts could not be orally modified, *see id.* § 5.072, failing to record the Residential Lease/Purchase Agreements, *see id.* § 5.076, and failing to provide an annual accounting, *see id.* § 5.077. Appellants further allege, and Brown does not dispute, that after executing the deeds of trust in 2006, Brown did not record the deed for 1302 Astor Place until July 2019 and did not record the deed for 1305 Astor Place until 2022. *See id.* § 5.081 ("[T]he seller shall execute a deed containing any warranties required by the contract and conveying to the purchaser recorded, legal title of the property"). Mendo sold 1302 Astor Place in July 2019. Appellants continue to reside at 1305 Astor Place.

Appellants sued Brown on June 30, 2023. Their live pleading asserts claims for all of Brown's alleged violations of the Property Code in addition to asserting claims for breach of contract, fraud, fraudulent inducement, damages under the Deceptive Trade Practices Act

4

(DTPA), *see* Tex. Bus. & Com. Code § 17.46, statutory real estate fraud, *see id.* § 27.01, and attorney's fees. Brown moved for summary judgment on traditional and no-evidence grounds based on the expiration of the applicable statutes of limitations and on the application of the economic loss doctrine "due to the fact the claims relate to and stem from a contract(s) which controls all claims or potential liability for the matters raised in this lawsuit." Appellants responded, arguing that the statutes of limitations did not apply based on the continuing tort doctrine. The trial court granted Brown's motion without specifying the grounds for its ruling. On appeal, Appellants assert that the trial court erred in granting summary judgment "contrary to the evidence presented by Appellants at trial" and in not applying the doctrines of fraudulent concealment or continuing tort to toll the statutes of limitations. They further argue that Brown should be held individually liable for her actions as trustee.

## ANALYSIS

### Standard of Review

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). A defendant moving for traditional summary judgment has the burden to conclusively show that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). By contrast, a party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Id.* R. 166a(i). A no-evidence motion "shifts the burden to the nonmovant to present

5

evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

A defendant is entitled to summary judgment on an affirmative defense if it conclusively proves all the elements of the affirmative defense. *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant seeking summary judgment on the basis of limitations must conclusively prove when the cause of action accrued and, if the plaintiff has pleaded a defensive theory, conclusively negate its application. *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000); *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). "When, as here, multiple grounds are asserted in a summary-judgment motion and the summary-judgment order does not specify a ground for the court's rulings, the appellant must show on appeal that each independent ground alleged is insufficient to support summary judgment." *Smith v. Autodesk, Inc.*, No. 03-11-00674-CV, 2012 WL 3600887, at *2 (Tex. App.—Austin Aug. 16, 2012, no pet.) (mem. op.) (citing *Pickett v. Texas Mut. Ins.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.)). "Therefore, we will affirm the summary judgment[] in this case if any ground presented in the summary-judgment motions is meritorious or is unchallenged on appeal." *Id.* (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

**Fraudulent Concealment and Appellants' Live Pleading**

We begin by addressing Appellants' argument that fraudulent concealment should toll the statutes of limitations. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996) (explaining fraudulent concealment). Appellants first raised fraudulent

concealment as a defense to limitations in their fourth amended petition. But the third amended petition was the live pleading at the time of the summary-judgment hearing. Appellants filed the fourth amended petition about three months after the trial court entered its final order granting summary judgment. A trial court bases its decision on summary judgment on pleadings "on file at the time of the hearing." Tex. R. Civ. P. 166(a)(c). Although rule 166a(c) permits pleadings to be filed after the time of the hearing and before judgment "with permission of the court," *id.*, nothing provides for an amended petition to be filed after the trial court has entered its judgment. *See Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 734 (Tex. App.—Texarkana 2003, no pet.) ("A trial court cannot grant a motion to amend the pleadings once the court renders judgment"; refusing to consider arguments in pleading filed after grant of summary judgment because it was "not on file" at time of hearing). As a result, we do not consider Appellants' argument regarding fraudulent concealment.

**Statute of Limitations and Continuing Tort**

We next turn to whether the doctrine of continuing tort tolls limitations for Appellants' claims. Brown asserts that the longest limitations period applicable to Appellants' claims is four years from when the cause of action accrued. *See* Tex. Bus. & Com. Code § 17.565 (two-year limitations period for DTPA claims); Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) (four-year limitations period for fraud); *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007) (per curiam) (applying § 16.004(a)(4)'s four-year limitations period to statutory fraud); Tex. Civ. Prac. & Rem. Code §16.051 (residual four-year limitations period applicable to "[e]very action for which there is no express limitations period, except an action for the recovery of real property"). Brown further argues that the latest date a cause of

7

action could have accrued was in 2006, when the contracts were converted to deeds of trust, which Appellants signed, thereby agreeing to pay the principal balances stated therein. Therefore, she concludes that all of Appellants' claims are barred by the applicable statutes of limitations.

Generally, a cause of action accrues when a wrongful act causes an injury. *See Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998). And ordinarily, once the limitations period commences to run, nothing will stop it except an event provided for by statute. *Leonard v. Eskew*, 731 S.W.2d 124, 128 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (citing *Tyson v. Britton*, 6 Tex. 222 (1851)). Courts have, however, applied the doctrine of continuing tort to toll limitations. *See Upjohn Co. v. Freeman*, 885 S.W.2d 538, 543 (Tex. App.—Dallas 1994, writ denied) (pill taken daily that caused continuing injury is basis for continuing tort); *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 156 (Tex. App.—Dallas 1980, no writ) (although each day of false imprisonment is itself separate cause of action, court viewed involuntary detention without access to counsel in mental hospital as one continuing tort). "A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action." *First Gen. Realty Corp. v. Maryland Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App.—Austin 1998, pet. denied). "[A] continuous tort involves not only continuing wrongful conduct, but continuing injury as well." *Upjohn*, 885 S.W.2d at 542 (citing *Adler*, 594 S.W.2d at 155–57). A continuing tort accrues when the tortious conduct ceases. *Id.* (citing *Tectonic Realty Inv. Co. v. CNA Lloyd's of Tex. Ins.*, 812 S.W.2d 647, 654 (Tex. App.—Dallas 1991, writ denied)). The fact that damages may accumulate after a tort is committed does not toll limitations. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). And, "if each of the defendant's separate behaviors caused a distinct injury, the

8

continuing tort rule does not apply." *Texas Disp. Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587–88 (Tex. App.—Austin 2007, pet. denied).

Appellants allege that Brown violated sections 5.068, 5.069, 5.072, 5.076, and 5.077 of the Property Code from the inception of the Residential Lease/Purchase Agreements until the execution of the deeds of trust in 2006. Thus, Appellants acknowledge that the conduct underlying these offenses ceased in 2006, and, assuming the doctrine of continuing tort applied to these statutory claims, the statute of limitations began to run when the underlying conduct ceased, and expired, at most, four years later, in 2010.

Similarly, Appellants' claims for breach of the Residential Lease/Purchase Agreements, fraud, fraudulent inducement, damages under the DTPA, and statutory real estate fraud are also based on alleged conduct, including miscalculations and misrepresentations, that occurred, at the latest, in 2006. The relevant limitations periods likewise began to run in 2006 and expired two to four years later, by 2010 at the latest.

Appellants emphasize that the result of Brown's conduct is that, since executing the deeds of trust in 2006, they have been paying Brown more than they would have had the terms of the initial agreements, as Appellants understand them, been followed. They urge that these alleged inflated payments give rise to a continuing tort. But "[c]are must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tort[i]ous acts and 2) continuing injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not." *Rogers v. Ardella Veigel Inter Vivos Tr. No. 2*, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied) (holding that bank's periodic collection of fees as purported trustee of nonexistent trust did not constitute continuing tort because all injury arose from bank's single act of usurpation); *see Dickson Constr., Inc.*

9

*v. Fidelity & Deposit Co. of Md.*, 960 S.W.2d 845, 851 (Tex. App.—Texarkana 1997, pet. denied) (holding that although contractor's injuries and damages may have continued to grow over time after initial injury was incurred and surety refused to alter its position, wrongful action was not continuing tort and did not toll limitations); *see also Murray*, 800 S.W.2d at 828 (noting action generally accrues at time when facts come into existence which authorize claimant to seek judicial remedy and fact that damage may continue to occur for extended period after accrual does not prevent limitations from starting to run).

For example, in *Christerson v. Speer*, the defendants loaned $250,000 to the plaintiffs to finance the plaintiffs' purchase of the defendants' home. No. 01-16-00469-CV, 2017 WL 1520449, at *1 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, pet. denied) (mem. op.). Fourteen years later, the defendants notified the plaintiffs that they owed outstanding interest on the note and began foreclosure proceedings. *Id.* The plaintiffs sued the defendants for fraud and various other torts based on the loan. *Id.* The defendants moved for summary judgment on the applicable statutes of limitations. *Id.* at *4. The trial court granted summary judgment in favor of defendants on all claims. *See id.* at *1. On appeal, the plaintiffs argued that the accrual of their tort claims was delayed under a continuing tort theory. *See id.* at *4. The court of appeals noted that unlike conduct constituting a continuing tort, the plaintiffs' monthly payments, as well as the defendants' later demand for the catch-up payment, all stemmed from conduct that occurred before and at the closing rather than over time. *Id.* at *7. The court therefore concluded that the continuing tort doctrine did not toll the accrual of plaintiffs' tort claims and that their claims were time-barred. *See id.*

Based on the foregoing analysis, we conclude that the continuing tort doctrine does not apply to Appellants' claims and that the trial court correctly granted summary judgment based on the applicable statutes of limitations.

**Property Code section 5.081**

Appellants assert that Brown violated section 5.081 of the Property Code, which provides methods to convert a purchaser's interest in property under an executory contract into recorded, legal title. For a conversion pursuant to a buyer's delivery to a seller of a promissory note equal to the balance of the total amount owed by the purchaser under the contract, the seller is required to "execute a deed containing any warranties required by the contract and conveying to the purchaser recorded, legal title of the property." Tex. Prop. Code § 5.081(c)(1). "A seller who violates [§ 5.081] is liable to the purchaser in the same manner and amount as a seller who violates Section 5.079 is liable to a purchaser." *Id.* § 5.081(e). Section 5.079, in turn, provides for liquidated damages to be paid by the seller for each day the seller fails to transfer title, and it allows for the buyer to recover "reasonable attorney's fees." *Id.* § 5.079.

In addition to asserting that this claim was barred by the residual statute of limitations, Brown argued that the economic loss doctrine barred Appellants' claims. Appellants do not challenge this second ground for summary judgment as it relates to section 5.081. Instead, their argument regarding the economic loss doctrine is that "Incident to Trustees breach of contract, many fraudulent and illegal acts it committed gave rise to the Mendos entitlement to economic loss." Because they did not challenge every ground on which summary judgment regarding the section 5.081 claims might have been based, we affirm the trial court's summary judgment as to this claim. *See Smith*, 2012 WL 3600887, at *2.

11

Having concluded that the trial court did not err in granting summary judgment, we need not address Appellants' arguments regarding Brown's individual liability.

## CONCLUSION

We affirm the trial court's grant of summary judgment.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed: March 6, 2026